USCA1 Opinion

 

 March 30, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1571 UNITED STATES OF AMERICA, Appellee, v. GLENN ALLEN, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Brown,* Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Perry O'Brian, by Appointment of the Court, for appellant. _____________ F. Mark Terison, Assistant United States Attorney, with whom _______________ Richard S. Cohen, United States Attorney, and James L. McCarthy, ________________ __________________ Assistant United States Attorney, were on brief for appellee. ____________________ March 30, 1993 ____________________ * Of the Fifth Circuit, sitting by designation. Judge Brown (now deceased) heard oral argument in this matter, and participated in the semble, but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). ____________________ -2- TORRUELLA, Circuit Judge. Appellant Glenn Allen was ______________ convicted of conspiracy to possess in excess of 10 grams of LSD, possession of psilocybin with intent to distribute, and distribution of psilocybin, in violation of 21 U.S.C. 841(a)(1) and 846, and 18 U.S.C. 2. Appellant alleges that insufficient evidence existed to support his convictions and that the government violated his Fourth Amendment rights. Based on these allegations, appellant requests a new trial. Because we find that sufficient evidence supported appellant's convictions, and that no Fourth Amendment violations occurred, we affirm the verdict. BACKGROUND BACKGROUND __________ Evidence of the following appeared at trial. A United States postal inspector, assigned to investigate transportation of illicit drugs through the mail, became suspicious of two Express Mail package receipts. The receipts were addressed to Kurt Humphrey in Maine and sent from two locations on the west coast of the United States. The sender's name on each receipt coincided with a previously investigated sender. In addition, the originating addresses were false. The postal inspector directed the appropriate postmaster in Maine to watch for future Express Mail packages addressed to Kurt Humphrey from the west coast. Such a package arrived from Oregon on January 11, 1990 at 7:00 a.m. The postmaster alerted the postal inspector one hour later when the inspector arrived at the New Hampshire -2- office, where he was working that day. The postal inspector directed the postmaster to hold the package pending further instruction. Ordinarily, the postmaster would have immediately notified Humphrey that the package had arrived. The package had a guaranteed delivery time of 3:00 p.m. that day. At 10:00 a.m. in New Hampshire, 7:00 a.m. on the West Coast, the inspector called the appropriate Oregon office and learned that the originating address and the sender's name were fictitious. The inspector then arranged with the Maine state police for a trained dog to sniff the package for drugs. The dog was trained to find marijuana, cocaine, hashish, and heroin in all of their forms. When the state police arrived at the post office at noon, the postmaster closed the office for lunch. He then took the police officers to his nearby house to conduct the test in privacy. Four times, the police hid the package in the garage and sent the dog to find it. Each time, the dog located the package and indicated the presence of drugs. The police presented an affidavit to a local magistrate describing the test and stating that the package had been sent from a fictitious address. The magistrate issued a search warrant at 4:21 p.m. When the police officers opened the package, they found 11,200 rations of LSD on 112 sheets of blotter paper. The police then prepared a dummy package with two sheets of blotter paper in an apparently unopened Express Mail envelope. Meanwhile, sometime between 11:00 a.m. and 2:00 p.m., -3- Humphrey checked his post office box, found nothing, and left without inquiring about the package. The next day, Humphrey returned to the post office and received the dummy package. When Humphrey left the post office, two police officers followed him. They ultimately stopped him en-route to appellant's house. At trial, Humphrey described appellant's participation in the scheme, alleging that appellant recruited him to receive packages and deliver them to appellant for a fee of fifty dollars. Humphrey also stated that appellant sold him $250 worth of psilocybin mushrooms. The police later found psilocybin mushrooms in Humphrey's home and in a barn on appellant's family property. In addition, the police found a money order for $400 from James Paoletti made out to appellant in appellant's home. Paoletti testified that the money order represented payment for LSD. Appellant moved to suppress the contents of the Express mail package unsuccessfully. He also lost motions for judgment of acquittal. APPELLANT'S CLAIMS APPELLANT'S CLAIMS __________________ I. Sufficiency of the evidence I. Sufficiency of the evidence "The standard of review for sufficiency challenges is whether the total evidence, taken in the light most amicable to the prosecution, together with all reasonable inferences favorable to it, would allow a rational fact-finder to conclude -4- beyond a reasonable doubt that the defendant was guilty as charged." United States v. Maraj, 947 F.2d 520, 522-23 (1st Cir. _____________ _____ 1991). Viewing the record in this light, we find sufficient evidence for appellant's conviction on all three counts. First, through testimony from Paoletti and Humphrey, the government presented sufficient evidence for a rational jury to conclude that appellant conspired to possess LSD with intent to distribute it. The following evidence was admitted at trial. Paoletti sent appellant a $400 money order to buy LSD that appellant would obtain from the West Coast. (Transcript of Trial Proceedings at 145). After procuring an Express Mail shipment of LSD from the West Coast, appellant would pay Humphrey to retrieve the package from the post office and deliver it to appellant's home. Id. at 20. Pursuant to a search warrant, police officers __ searched the package, discovered LSD, and replaced it with a dummy package. Humphrey retrieved the package, and the officers arrested him on the way to appellant's home. Id. at 20-21. From __ this evidence, a rational jury could find appellant guilty of conspiracy to possess LSD beyond a reasonable doubt. Second, sufficient evidence supported appellant's conviction for distribution of psilocybin. To prove this charge, it was enough to show that the defendant had the "power and the intention to cause the transfer . . . either directly or through another person . . . ." United States v. Acevedo, 842 F.2d 502, _____________ _______ 507 (1st Cir. 1988). Humphrey testified that (1) when appellant was in Europe in November 1989, he phoned Humphrey, and Humphrey -5- asked him if he could get some psilocybin, (Transcript of Trial Proceedings at 34); (2) appellant offered him the psilocybin that was in the barn at appellant's home, id. at 35; (3) appellant __ agreed to sell a quarter pound of psilocybin for $250, which Humphrey would pay when appellant returned from Europe, id.; (4) __ Humphrey took the psilocybin from the barn, id. at 35-36; and (5) __ when appellant returned, Humphrey offered him a gun as partial payment, which appellant took, saying he'd try it to see if he wanted it, id. at 39. The government also introduced evidence __ that the police confiscated psilocybin from Humphrey, id. at 37, __ and from the barn on appellant's property, id. at 90-91. From __ this evidence, a rational jury could conclude that appellant had the power and intent to cause the transfer of psilocybin. Finally, sufficient evidence existed to support appellant's conviction for possession with intent to distribute psilocybin. In order to prove this crime, the government must establish that the defendant had, possession of a controlled substance, knowledge of that possession, and the specific intent to distribute it. 21 U.S.C. 841(a)(1). Constructive possession will support a conviction and can be established by circumstantial evidence such as a defendant's ownership or control over the premises in which the contraband is hidden. Acevedo, 842 F.2d at 507. Appellant argues that he had no _______ ownership or control over the psilocybin because his family had access to the barn where it was stored, and because he exercised no exclusive or mutual control over the part of the barn in which -6- the mushrooms were found. Humphrey testified, however, that appellant ordered the psilocybin and hid it in the barn, (Transcript of Trial Proceedings at 28), and that on the same day, appellant showed him psilocybin mushrooms that he had in a duffel bag, id. at 28. From this evidence, the jury could infer __ that appellant owned or controlled the psilocybin in the barn. Appellant attacks the credibility of the government's witnesses for all three charges. He complains that part of Paoletti's testimony conflicted with a prior made statement and that Humphrey offered solely conclusory assertions. These are suitable arguments for the jury, and appellant had ample opportunity to present them at trial. As the jury chose to reject them, we must do the same. United States v. Angiulo, 897 _____________ _______ F.2d 1169, 1197 (1st Cir.) (reviewing court must resolve all credibility determinations in favor of verdict), cert. denied, ____________ 498 U.S. 845 (1990). II. Fourth Amendment Issues II. Fourth Amendment Issues Appellant next argues that the district court erred in denying his motion to suppress the LSD found in the Express Mail package. Specifically, appellant contends that the detention and subsequent search of the package violated his Fourth Amendment right against unreasonable search and seizure because (1) the detention was not based on a reasonable suspicion that it contained contraband; and (2) it was unreasonable.1 See United ___ ______ ____________________ 1 In his brief, appellant also argued that the police officers lacked probable cause to search the package because the dogs were not trained to sniff LSD. At oral argument, however, he -7- States v. La France, 879 F.2d 1, 4 (1st Cir. 1989) (police ______ __________ entitled to delay delivery if delay is based reasonable suspicion and is reasonably executed). We find, however, that a reasonable view of the record evidence supports the district court's denial of the motion. See United States v. Masse, 816 F.2d 805, 809 n.4 ___ _____________ _____ (1st Cir. 1987) (citing United States v. Veillette, 778 F.2d 899, _____________ _________ 902 (1st Cir. 1985) (appellate court should uphold district court's denial of motion to suppress if reasonable view of evidence supports it). The court properly found that reasonable suspicion supported the package's delayed delivery. The record evidence shows that the postal inspector has seven years of experience investigating drug transportation through the mail, and has investigated between 200 and 300 cases involving drug transport through Express Mail. (Transcript of Hearing on Defendant's Motion to Suppress Evidence at 12-13). He grew suspicious of the package for several reasons. Individuals rarely receive Express Mail packages, and Humphrey received three in five months. Id. __ ____________________ abandoned that argument and conceded that the disputed time frame consisted of that between the arrival of the package and the sniff test. We note that the test did in fact generate probable cause. Probable cause is judged upon the information known to the authorities and presented at the time the warrant issues. United ______ States v. Johnston, 784 F.2d 416, 420 (1st Cir. 1986). ______ ________ Information available to the magistrate at this time revealed that a trained dog had alerted to the presence of drugs in the package four times. This information gave rise to probable cause to suspect that the package contained contraband. That the package later turned out to contain LSD, which the dog was not trained to find, is irrelevant. -8- at 55. Also, the inspector knew that Humphrey had received suspicious mailings from the West Coast in the past. Id. at 15. __ The labels were suspicious because the return addresses differed, but the handwriting, in his observation, appeared the same. Id. __ Also, one of the senders had the same name as someone who previously mailed an Express Mail package containing psilocybin. Id. From this evidence, the district court found that the __ inspector had reasonable suspicion to detain the package initially. When the inspector learned that the sender's address was fictitious, additional suspicion developed, justifying the further delay that it took to arrange for the dog sniff test. In addition to having reasonable suspicion, the officials did not unreasonably delay delivery of the package. To determine the reasonableness of the delay, we review the diligence of the investigators, the length of detention, and the information conveyed to the suspect. La France, 879 F.2d at 7 _________ (citing United States v. Place, 462 U.S. 696, 709-10 (1983)). _____________ _____ In the present case, the law enforcement authorities acted diligently. The delay lasted only as long as necessary. The postmaster promptly contacted the postal inspector to obtain further information, and the postal inspector then promptly verified the addresses, waiting only for the appropriate office to open. Id. at 26-27. When the inspector determined that the __ addresses did not exist, he arranged for and executed the dog test. (Transcript of Hearing on Defendant's Motion to Suppress Evidence at 26-29). No evidence suggested that the law -9- enforcement officials could have acted more swiftly. Furthermore, the dog was located at a distance from the postmaster's home, id. at 91-92; yet, within five hours after the __ postmaster notified the inspector about the package, the sniff test was complete. Indeed, sufficient probable cause to search the package developed two hours before the guaranteed delivery time, and thus before appellant had a significant possessory interest. See La France, 879 F.2d at 7 (before guaranteed ___ __________ delivery time, only possessory interest is contract-based expectancy that package would be delivered on time). The district court judge properly found the delay reasonable. Finally, appellant received no misinformation regarding his package. Indeed, he never inquired about the package. Accordingly, we find that the record evidence supports the district court's denial of the motion to suppress. CONCLUSION CONCLUSION __________ Because sufficient evidence supported appellant's conviction, and appellant's Fourth Amendment rights were not violated, we affirm appellant's conviction. Affirmed. ________ -10-