(No. 81920.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CRAIG L. SHAPIRO *et al.*, Appellees.

*Opinion filed October 17, 1997.*

BILANDIC, J., specially concurring.
MILLER, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson, Lisa Anne Hoffman and William L. Browers, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Robert J. Biderman and Linda Susan McClain, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel, and Laura L. Gestrin, law student), for the People.

Thomas A. Bruno, of Urbana, for appellee Craig Shapiro.

Daniel D. Yuhas, Deputy Defender, and Arden J. Lang, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee Rachel Smith.

JUSTICE HEIPLE delivered the opinion of the court:

At issue is the constitutionality of the United States Postal Service's detention and investigation of a suspicious package, and of the search warrants and arrests which ensued. The Framers of the United States Constitution believed a uniform, safe and secure mail delivery system so important to our democracy that the United States Constitution requires Congress to establish a post office. U.S. Const., art. I, § 8, cl. 7. Indeed, at the inception of our Republic mail delivery was deemed so essential that some of those who unlawfully interfered

with it were sentenced to death.[1] But what of where the interfering party is the government itself, either in the person of the United States Postal Service or any of our myriad police agencies? Obviously, the United States mail cannot be completely immune from any and all investigation. Yet, the constitutional ramifications of exercising police power over the mail are significant, especially as regards the free speech guarantees of the first amendment and the search and seizure guarantees of the fourth amendment. We allowed the State's petition for leave to appeal (155 Ill. 2d R. 315) to consider whether the government's actions in the instant case comported with the fourth amendment's search and seizure guarantees. For the reasons expressed below, we hold that the government's actions violated the fourth amendment and, accordingly, affirm the judgments of the lower courts suppressing the evidence and quashing defendants' arrests.

## FACTS

Defendants, Rachel H. Smith and Craig L. Shapiro, were charged with possession with intent to deliver 200 grams or more of the controlled substance psilocybin. 720 ILCS 570/401(a)(11) (West 1994). The following facts pertinent to this appeal were subsequently elucidated.[2]

On or before January 19, 1995, a 14 by 14 by 9 inch package wrapped in heavy brown paper, with heavily taped seams, was deposited with the United States Postal Service's (Postal Service) Express Mail in Eugene, Oregon. The return address was in Eugene, Oregon, and the addressee was defendant Rachel Smith of Champaign, Illinois. The scheduled delivery date was Friday, January 20, 1995. On Thursday, January 19, 1995, the

---

[1]W. Rich, The History of the United States Post Office to the Year 1829, 95 (1924).

[2]For a more detailed rendition of the facts, the reader is referred to the appellate opinion in 283 Ill. App. 3d 343.

package was en route to Champaign when Postal Service officials identified it as suspicious at O'Hare International Airport (O'Hare) in Chicago because it met three of the Postal Service's drug package profile criteria, *viz.*, wrapped in heavy brown paper; heavily taped; and addressed from one individual to another. Pursuant to the Postal Service's internal policies, the package was removed from the mail stream at O'Hare and shipped to United States Postal Inspector Stephen Atterbury in St. Louis, Missouri, for investigation.

Atterbury received the package on Friday, January 20, 1995, whereupon he telephoned Postal Service officials in Oregon and learned that the return address on the package was fictitious. He then contacted the St. Louis County police department canine unit and arranged for one of its narcotics dogs to check the package. After the dog twice "alerted on" the package, Atterbury completed a search warrant affidavit and presented it to a federal magistrate in Missouri, who issued a search warrant at 2:38 p.m. on January 20, 1995. Atterbury thereafter searched the package and discovered that it contained the controlled substance psilocybin. He then contacted Champaign police officials and arranged to participate in a controlled delivery of the package the following Monday.

On Monday, January 23, 1995, Atterbury assisted the Champaign police in obtaining an anticipatory search warrant for the addressee's premises. After the search warrant was issued, Atterbury and the police attempted the first controlled delivery of the package. Because no one answered the door, delivery was postponed until the following day. On Tuesday, January 24, 1995, Atterbury successfully accomplished a controlled delivery. Defendant Shapiro signed for the package on behalf of defendant Smith and the police then executed the anticipatory search warrant. When the police

subsequently interviewed defendant Shapiro, Shapiro noted that Smith had been expecting the package and, when it was not delivered on time, had called the post office to inquire about the delay. The post office told her that the package was lost.

After their arrests, both defendants moved to suppress the evidence and to quash their arrests on a variety of search and seizure theories. The circuit court of Champaign County suppressed the evidence and quashed defendants' arrests, finding, *inter alia*, that the government lacked probable cause to detain and to investigate the package at O'Hare, which rendered all the subsequent searches and warrants invalid. The appellate court observed that the circuit court incorrectly applied the probable cause standard instead of the reasonable articulable suspicion standard in determining the validity of the initial decision to detain and investigate the package, and further held that the latter standard had been met. The appellate court nevertheless affirmed the judgment of the circuit court on a different ground, ruling that the nature and extent of the detention and investigation which led to the advent of probable cause were unreasonable. 283 Ill. App. 3d at 354-55.

## ANALYSIS

Whether the government has seized property in violation of the fourth amendment generally presents a mixed question of law and fact: first a court weighs the evidence and determines the facts surrounding the complained-of conduct, after which it decides whether, as a matter of law, these facts constitute an unconstitutional seizure. In the instant case, however, there are no factual disputes and our review is *de novo. People v. Foskey*, 136 Ill. 2d 66, 76 (1990). We additionally observe that our disposition of this case follows from our conclusions regarding the constitutionality of (1) the initial decision to detain and investigate the defendants' package

at O'Hare International Airport; and (2) the reasonableness of that detention and investigation. Accordingly, we consider only these issues and do not reach the arguments raised by the parties concerning the anticipatory search warrant issued in Champaign, Illinois.

I. Decision to Detain and to Investigate the Package

The United States Constitution protects the "right of the people to be secure in their persons, houses, papers, *and effects*, against unreasonable searches *and seizures*." (Emphasis added.) U.S. Const., amend. IV.[3] When the people deposit their effects/possessions for delivery with the United States mail, the constitutional proscriptions concerning searches and seizures do not cease to apply simply because the item has been delivered into the hands of the government. See *United States v. Place*, 462 U.S. 696, 705, 77 L. Ed. 2d 110, 119-20, 103 S. Ct. 2637, 2643 (1983) ("seizure may be made after the owner has relinquished control of the property to a third party"). Indeed, effects deposited with the United States mail enjoy the same search and seizure protections as if they were located within a private residence. *In re Jackson*, 96 U.S. 727, 733, 24 L. Ed. 877, 879 (1878).

Yet the fourth amendment does not preclude all investigations of the mail. A seizure, after all, involves the *meaningful interference* with a person's *possessory*

---

[3]The Illinois Constitution similarly provides that "people shall have the right to be secure in their persons, houses, papers *and other possessions* against unreasonable searches [*and*] *seizures*." (Emphasis added.) Ill. Const. 1970, art. I, § 6. The parties, however, have not premised any of their arguments on the Illinois Constitution and we thus do not consider its application, except to observe that there is no reason to suggest that the search and seizure guarantees of article I, section 6, of the Illinois Constitution are any less comprehensive than we interpret those of the fourth amendment to be.

*interests* in an item of personal property. *United States v. Jacobsen*, 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). Citing *United States v. Van Leeuwen*, 397 U.S. 249, 252, 25 L. Ed. 2d 282, 285, 90 S. Ct. 1029, 1032 (1970), the State contends that the mere detention of mail to examine the exterior of a package never constitutes a seizure because the fourth amendment does not prohibit examinations of the exterior of packages, regardless of whether delivery delays result. As defendants correctly counter, however, such a broad reading of *Van Leeuwen* is unwarranted given its further statement that "[t]heoretically *** detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the fourth amendment." *United States v. Van Leeuwen*, 397 U.S. at 252, 25 L. Ed. 2d at 285, 90 S. Ct. at 1032. Indeed, to suggest otherwise raises an Orwellian specter quite at odds with the fourth amendment. The investigation of the exterior of a package by the government may often be consistent with the fourth amendment; however, depending upon the nature and duration of the detention and investigation, it may at other times violate the fourth amendment's seizure proscription. *United States v. Van Leeuwen*, 397 U.S. at 252, 25 L. Ed. 2d at 285, 90 S. Ct. at 1032; see also *United States v. Allen*, 990 F.2d 667, 671 (1st Cir. 1993) (considering, and citing other cases which have considered, whether the government's detention of mail amounted to an unconstitutional seizure as anticipated in *Van Leeuwen*).

The rationale for allowing the detention and investigation of mail absent probable cause is found in *Terry v. Ohio*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880 (1968), and its progeny, which interpret the fourth amendment as permitting minimally intrusive investigatory stops of individuals and/or their property where there is a reasonable suspicion of criminal activity. See

Ill. Rev. Stat. 1971, ch. 38, pars. 107—14, 108—1.01 (statutory adoption of *Terry* standard in Illinois). Reasonable suspicion arises where specific and articulable facts, and rational inferences therefrom, reasonably justify an intrusion. *Terry v. Ohio*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Based upon experience and drug-trafficking intelligence, the United States Postal Inspection Service has developed a drug package profile for packages deposited in the Express Mail and Priority Mail. Profile characteristics include: (1) heavy brown paper wrapping; (2) heavily taped seams; (3) handwritten address label; (4) sent from one individual to another; (5) mailed from a zip code different from the address; and (6) a fictitious address. While it is uncertain whether any one of these criteria, standing alone, would support a finding of reasonable articulable suspicion, in various combinations these criteria might indeed support such a finding.

In the instant case, Postal Service officials initially decided to investigate defendants' package at O'Hare because it was wrapped in brown paper with heavy taping and was hand-addressed from one individual to another. In considering the constitutionality of this action, the trial court erroneously ruled that probable cause was necessary to permit the detention and investigation of defendants' package, whereupon it concluded that the initial detention and investigation amounted to an unconstitutional seizure. The appellate court, however, applied the legally appropriate reasonable articulable suspicion standard and concluded that there was reasonable suspicion to detain and investigate the package. 283 Ill. App. 3d at 351-52.

Despite defendants' protestations otherwise, we hold that the appellate court was correct in its conclusion that these factors were sufficient to give rise to a reasonable articulable suspicion that the package contained

narcotics. According to the Postal Service, only 5% of Express Mail packages are addressed from one individual to another. This fact, in concert with the brown paper and heavy taping typically used to prevent narcotics odors from escaping such packages, warranted a minimally intrusive detention and investigation of defendants' package under the reasonable articulable suspicion standard. *United States v. Place*, 462 U.S. at 703, 77 L. Ed. 2d at 118, 103 S. Ct. at 2642.

II. Reasonableness of the Detention and Investigation

We next consider the reasonableness of the government's detention and investigation of the defendants' package, for where reasonable articulable suspicion permits the detention and investigation of a person's personal property, the fourth amendment further demands that that detention and investigation be reasonable. *United States v. Place*, 462 U.S. at 709-10, 77 L. Ed. 2d at 122-23, 103 S. Ct. at 2645-46. Whether the detention and investigation of a person's property, commenced upon reasonable articulable suspicion of criminal activity, is itself reasonable depends largely upon investigatory diligence and the length of detention. *United States v. Place*, 462 U.S. at 709-10, 77 L. Ed. 2d at 122-23, 103 S. Ct. at 2645-46; see also *United States v. Allen*, 990 F.2d 667, 671-72 (1st Cir. 1993) (applying the *United States v. Place* criteria to determine reasonableness of detention and investigation of United States mail). Only when the nature and extent of the detention are minimally intrusive of an individual's fourth amendment possessory interests can opposing law enforcement interests support a seizure based upon less than probable cause. *United States v. Place*, 462 U.S. at 703, 77 L. Ed. 2d at 118, 103 S. Ct. at 2642.

Here the government did not expeditiously conduct its investigation of the defendants' package at O'Hare, where it initially targeted the package for investigation

because it was wrapped in brown paper, heavily sealed with tape and hand-addressed from one individual to another. Indeed, no investigation occurred at O'Hare. Instead, pursuant to an internal policy of the Postal Service, the package was sealed in a new container and rerouted for investigation by the postal inspector in St. Louis, far afield from either O'Hare or the package's intended destination in Champaign, Illinois. In St. Louis, Postal Inspector Atterbury telephoned postal officials in Oregon and determined that the return address was fictitious. He then arranged to have a dog trained to detect drugs come into close proximity to the package, which the dog alerted on twice. At this juncture there was probable cause to suspect the package contained narcotics and, after receiving a warrant from a federal magistrate in Missouri, Atterbury searched the package and discovered that it contained psilocybin. That probable cause eventually arose is dispositive of nothing, however, as it does not address the reasonableness of the detention and investigation which gave rise to the probable cause.

In considering whether the investigation and length of detention of mail is so minimally intrusive that it is reasonable in the absence of probable cause, courts consider whether law enforcement officials could have acted more swiftly. See, *e.g.*, *United States v. Allen*, 990 F.2d 667, 671 (1st Cir. 1993). We take judicial notice that O'Hare is located in Chicago, which has no shortage of telephones, drug detection dogs or federal magistrates. Thus there appears no constitutionally reasonable justification for shipping the defendants' package, which they expected would arrive by Express Mail on January 20, 1995, to St. Louis so that Atterbury could telephone Oregon to establish whether the return address was fictitious and afterwards arrange for a drug detection dog to sniff the package. Had these investiga-

tory steps been taken in Chicago, the duration of the investigation would have been significantly shorter, and the five-day delivery delay caused in part by rerouting the package to St. Louis substantially reduced. This is the investigatory diligence that is mandated by the fourth amendment, which seeks to insure that the government's interference with a person's possessory interest in property is minimally intrusive where it is premised not upon probable cause, but merely upon a reasonable articulable suspicion of illegal activity. *United States v. Place*, 462 U.S. at 703, 77 L. Ed. 2d at 118, 103 S. Ct. at 2642. That the Postal Service's internal policies required shipment of the package out of state for investigation is of no constitutional consequence, as it is the Postal Service that must accommodate the fourth amendment and not vice-versa. Accordingly, we conclude that the government's intrusion upon the instant defendants' possessory interest in their package was not minimal and thus did not comply with the fourth amendment.

We are cognizant that *United States v. Place* considered a third factor in determining the reasonableness of a detention and investigation of personal property short of probable cause: information given to the owner or possessor of the item detained for investigation. *United States v. Place*, 462 U.S. at 709-10, 77 L. Ed. 2d at 122-23, 103 S. Ct. at 2645-46. An Illinois State Police investigative report contained in the instant record shows that defendant Smith called the post office to inquire why the package was late and was told that it was lost. The record does not indicate whether Smith's telephone inquiry and the post office's response occurred prior to or after the advent of probable cause. We need not consider the uncertainty of the conversation's timing and its constitutional significance, however, because of our determination that the nature and duration of

the detention and investigation alone rendered it unreasonable. See *United States v. Place*, 462 U.S. at 710, 77 L. Ed. 2d at 123, 103 S. Ct. at 2646 (finding that the nature and length of detention was sufficient to render seizure unreasonable, though considering also what the suspect had been told regarding the detention). It is nevertheless worth observing that defendant Shapiro's awareness of and expectation that the package would arrive on its delivery date further illustrates the defendants' possessory interest in the package.

In affirming the judgments of the lower courts suppressing the evidence and quashing defendants' arrests, we are mindful of the scourge that drugs represent to American society and the importance of the so-called "war on drugs" in eradicating this social calamity. However, our Republic has enjoyed a peaceful and prosperous history for well over two centuries, not because we have increased police powers to achieve ordered liberty, but because we have recognized that ordered liberty requires that police powers be subjugated to the Bill of Rights. It is the latter, and not the former, that guarantees those freedoms the rest of the world associates with our Republic.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court affirming the circuit court's order suppressing the evidence and quashing defendants' arrests is affirmed.

*Appellate court judgment affirmed.*

JUSTICE BILANDIC, specially concurring:

I agree with the analysis and the result reached in part II of the majority opinion.

Because the detention and investigation of the defendants' package was not reasonable under the fourth amendment, the defendants' motions to suppress

must be granted and their arrests quashed. This holding is dispositive of this appeal.

There is no need to resolve the issues in part I of the majority opinion.

JUSTICE MILLER, dissenting:

Unlike the majority, I believe that the brief detention effected by authorities of the package in this case did not contravene the defendants' constitutional rights, and therefore I dissent.

The majority makes much of the decision by postal authorities to reroute the package from Chicago to St. Louis for purposes of investigation. The majority insists that the detour contributed significantly to the delay in the delivery of the package. I do not agree. The package was initially pulled from the stream of mail on Thursday, January 19, 1995. The postal inspector assigned to the case, Stephen Atterbury, received the package the next day, January 20, in St. Louis. Atterbury then learned from his counterparts in Oregon that the return address on the package was fictitious, and Atterbury also obtained the services of a specially trained dog, who detected narcotics in the package. That same day, Atterbury presented a request for a search warrant to a federal magistrate in St. Louis, and a warrant was issued at 2:38 that afternoon. Atterbury then opened the package and found inside $3^1/2$ pounds of a material containing psilocybin, a controlled substance.

The relevant period here begins with the initial seizure of the package on January 19 and ends with the issuance of the search warrant the next day. It is not clear from the record how much delay, if any, was caused by the decision to transfer the package to St. Louis on its southward journey from Chicago to Champaign. The extra time could not have exceeded part of a day, however, and Atterbury acted expeditiously in conducting his investigation and obtaining the warrant.

It should be noted that most of the five-day delay in the delivery of the package, mentioned by the majority, occurred after the warrant was obtained and the package was opened. Indeed, the record shows that, prior to the delivery of the package on Tuesday, January 24, Atterbury made several attempts to deliver the package on Monday, January 23, after the weekend, but no one at the residence answered the door that day.

Because I believe that the initial period of detention was reasonable, I respectfully dissent from today's decision.