**UNITED STATES of America Plaintiff,**

v.

**Michael Shawn BAILEY, et al., Defendants.**

**No. CR2–01–99(1,2).**

United States District Court, S.D. Ohio, Eastern Division.

March 19, 2002.

Michael J. Burns, Assistant U.S. Attorney, U.S. Attorney's Office, Columbus, OH, for plaintiff.

Steven Nolder, Federal Public Defender, Columbus, OH, for Bailey.

David Brandstool, Newark, OH, for Lambert.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of two Motions to Suppress, the first filed by Defendant Michael Shawn Bailey (Doc. # 18) and the second by Defendant Catherine L. Lambert (Doc. # 22). Both defendants essentially assert that a postal inspector conducted an unlawful detention, seizure, and search of an express mail package sent to 56709 High Ridge Road, Bellaire, Ohio (the "premises"). The Government concedes that Defendant Bailey has standing to challenge the search, while contending that Defendant Lambert does not. Because standing is undisputed as to Bailey, the Court will first address the issues he raises. For the reasons that follow, both motions are DENIED.

### I.

The facts relevant to the motions to suppress, while not wholly without conflict, are essentially undisputed. An evidentiary hearing was held on February 28, 2002. Testimony was given by Postal Inspector Joseph Long and by Gerald Ciafoni, owner of the premises who leased the residence to both movants.

Inspector Long testified that in December of 1997 he received a phone call from Olin Martin, then the Chief Deputy of the Belmont County Sheriff's office. Martin advised him that Defendant Bailey was suspected of illegal drug distribution and that his supply of drugs allegedly came through the United States mail. Martin indicated that Bailey was suspected of trafficking in methamphetamines being shipped in from Southern California. Beyond these details, Martin did not otherwise give details as to the basis for his suspicions concerning Bailey. Long, who works in Cleveland, Ohio, was unaware of the location of Belmont County or of Bellaire, Ohio and referred to a map to identify the county. Martin advised Long that he had originally called the Columbus Postal Inspector's office, but had been directed to refer the matter to the Cleveland office, which purportedly had jurisdiction over matters in Belmont County. Unbeknownst to Long, Belmont County is within the territorial jurisdiction of the United States District Court for the Southern District of Ohio. 28 U.S.C. § 115.

On December 17, 1997, Long called the Bellaire, Ohio Post Office and placed what is called a mail watch on any materials deliverable to Bailey's residence.[1] On Saturday, December 20, 1997, an express mail package arrived at the Bellaire Post Office. The package had been mailed from California on Thursday, December 18, 1997, and guaranteed for two day delivery.

A postal worker at the Bellaire Post Office called Long and described the package to him. According to Long, certain features of the package fit a profile of packages containing illegal drugs. Long testified, that from his training and experience, a variety of factors made him sus-picious as to the package in question, including (1) an origination location from Southern California; (2) a fictitious return address; (3) personal, not business, addresses of both sender and recipient; (4) bulky contents indicating that more than a letter or documents are being shipped.

Chief Deputy Olin Martin had previously told Long that the Belmont County Sheriff's office did not have a drug sniffing canine unit. Consequently, Long directed the Bellaire Post Office to deliver the package to him in Cleveland where he intended to subject the package to a sniff by a canine unit.

The next day, Long received the package between 6 and 7 a.m. in Cleveland; which is in Cuyahoga County. Unbeknownst to Long, the package had been transported at his direction from the territorial jurisdiction of the Southern District of Ohio to that of the Northern District of Ohio. See 28 U.S.C. § 114.

Long arranged for a canine unit from a local police department to check the package. The canine sniff was performed before 7:30 a.m. on the same day. Long was familiar with both the dog and handler, having used the unit on many prior occasions with accurate results. Upon sniffing the package, the dog immediately alerted, indicating the presence of unlawful narcotics. At this point, on the morning of December 21, 1997, Long believed he had sufficient probable cause to seek a search warrant.

Long also testified that, given the weight of the package and the lack of nexus to a larger organization, the matter did not fit the intake standards for cases accepted for prosecution by the United States Attorney's Office for the Northern

---

1. A mail watch is simply a request by a postal inspector that certain types of mail be monitored by postal employees and that the inspector be advised before delivery of certain types of items, such as express mail packages in this case. This procedure is separate and distinct from a mail cover which is a more formal process set forth in 39 C.F.R. 233.3.

District of Ohio. Consequently, he believed that the United States Attorney's Office would not seek a search warrant over the weekend. Long instead called a secretary that same Sunday and requested that she meet him early the next morning to prepare a search warrant affidavit. Long met with the secretary at 7:30 a.m. the next morning. As soon as the United States Attorney's Office opened on Monday, December 22, 1997, Long contacted an Assistant United States Attorney to assist in obtaining a search warrant.

The Assistant United States Attorney reviewed the proposed affidavit prepared by Long. The affidavit describes the precise street address of the residence to which the package was to be delivered. The address refers to Bellaire, Ohio but not to the County of Belmont. The affidavit states that the package was in the possession of Long. The affidavit does not describe the method by which he came into possession of the package.

The Assistant United States Attorney approved the affidavit as written by Long and the same was presented to Magistrate Judge David S. Perelman of the Northern District of Ohio. The Magistrate Judge signed the affidavit in the late morning of December 22, 1997. Long thereafter opened the package which included .95 ounces of methamphetamines. On the following day, Long and Martin made a controlled delivery of the package to Bailey's residence.

## II.

The defendants, Bailey and Lambert, contend that the detention, seizure, and searching of the express mail package constituted an unreasonable search and seizure in violation of the Fourth Amendment. The defendants contend that the original warrantless seizure of the package was unlawful, the removal of the package to the Northern District of Ohio was without legal authority, and the search warrant was issued by a judicial officer of the Northern District of Ohio who lacked jurisdiction over a matter arising outside of such district.

Analysis of these issues begins with *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), in which the Supreme Court addressed the authority of law enforcement to detain and open packages sent through the mails. The Court recognized that first-class mail (essentially meaning, in this context, letters or packages that are sealed and private, as opposed to flyers or postcards which are not) "is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." *Id.* at 251, 90 S.Ct. 1029.

Van Leeuwen had mailed two twelve pound packages from a post office near the Canadian border. He declared that the packages contained coins which he insured for $10,000. A postal clerk advised a policeman that he was suspicious of the packages. The officer attempted to locate the return address, which was a vacant housing area near a local college. While law enforcement officials sought a search warrant, the package was detained. Ultimately, a search warrant was issued and the package opened, twenty-nine hours after mailing.

The Supreme Court first held that the suspicious circumstances accompanying the mailing "certainly justified detention, without a warrant, while an investigation was made." *Id.* at 252, 90 S.Ct. 1029. The Court analogized the type of suspicion required as similar to the standard approved in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which is less than probable cause. The Court held that a detention of mail for a short period of time, pending investigation, is not a seizure. The Court noted:

The only thing done here on the basis of suspicion was detention of the packages. There was at that point no possible invasion of the right "to be secure" in the "persons, houses, papers, and affects" protected by the Fourth Amendment against "unreasonable searches and seizures." Theoretically—and it is theory only that respondent has on his side—detention of mail could at some point become an unreasonable seizure . . .

*Van Leeuwen,* 397 U.S. at 252, 90 S.Ct. 1029. The Court concluded by stating:

The rule of our decisions certainly is not that first-class mail can be detained 29 hours after mailing in order to obtain the search warrant needed for its inspection. We only hold that on the facts of this case—the nature of the mailings, their suspicious character, the fact that there were two packages going to separate destinations, the unavoidable delay in contacting the more distant of the two destinations, the distance between Mt. Vernon and Seattle—a 29 hour delay between the mailings and the service of the warrant cannot be said to be "unreasonable" within the meaning of the Fourth Amendment.

*Id.* at 253, 90 S.Ct. 1029.

Subsequent cases have applied the standards enunciated in *Van Leeuwen.* In *United States v. Dass,* 849 F.2d 414 (9th Cir.1988), law enforcement agents detained several packages which they suspected contained marijuana. One package was detained for twenty-three days, while the shortest detention was seven days. The Court found that, through more diligence, the detention could have been only thirty-six hours. The length of the delay was therefore an unreasonable seizure in violation of the Fourth Amendment.

In *United States v. Aldaz,* 921 F.2d 227 (9th Cir.1990), a local postal employee suspected a customer of using the mails to unlawfully ship drugs. The suspect was unemployed but had previously purchased money orders from the post office. The suspect brought three packages to the post office for mailing and used his girlfriend's return address. His girlfriend, who had been waiting in his truck, later on the same day mailed packages using the suspect's return address.

A postal inspector directed the postal employee to send the packages to him. The post office was located in the bush country of Alaska, where mail may only be received through air mail. The closest drug sniffing canine unit was 700 miles away in Anchorage. After the packages arrived, a canine unit alerted on the mailings. A search warrant was obtained three days after the detention began. The Court of Appeals concluded:

We examine the reasonableness of the delay here by assessing the reasonableness of its components: (1) the time taken transferring the packages from Emmonak to Anchorage, (2) the time between the arrival of the packages and their receipt by Inspector Hertle, (3) the time between his receipt of the packages and the drug sniffs and (4) the time between the drug sniffs and the execution of the warrants. Under the facts before us, the detention and delay of Aldaz's packages were not unreasonable. First, the delay caused by the transfer of the packages from Emmonak to Anchorage was not unreasonably long. In contrast to *Dass,* drug-sniffing dogs were not available near the place of seizure. Rather, the nearest trained dogs were 700 air miles away. The magistrate concluded that it was unreasonable to expect postal authorities to procure the presence of drug-detecting dogs in a small bush community like Emmonak. We agree.

*Id.* at 230–31.

Of note is the decision of the Illinois Supreme Court in *People v. Shapiro,* 177

Ill.2d 519, 227 Ill.Dec. 142, 687 N.E.2d 65 (1997), in which a package was also detained by postal inspectors. The package was obtained by the inspectors at the O'Hare International Airport in Chicago. The inspectors then caused the package to be sent to St. Louis, Missouri, for a review by a canine unit. On the following day, after the canine alerted to the package, a federal search warrant was issued in Missouri and the package was opened.

The Illinois Supreme Court found that, while the original detention was lawful, the delay caused by shipping the package from O'Hare to St. Louis was unreasonable. The Court emphasized that O'Hare Airport "has no shortage of telephones, drug detection dogs or federal magistrates. Thus there appears no constitutionally reasonable justification for shipping the defendants' package … to St. Louis …." *Id.* at 71.

■ These cases demonstrate that the analysis is one of reasonableness, which varies under differing circumstances. For example, the length of the detention of a package is probably the single most important factor. The reasonableness of the duration of the seizure is determined by the location of the detention and the alternatives available to law enforcement officials. In *Aldez*, the remoteness of the post office rendered a three day detention reasonable. In contrast, a detention of even one extra day to permit the removal of a package from the O'Hare Airport, replete with drug dogs and federal agents, to another state for testing was unreasonable.

### III.

Defendant Bailey asserts five separate grounds on which he claims the evidence obtained from opening the package must be suppressed. He contends (1) the postal inspector lacked reasonable suspicion to initially detain the package; (2) the length of the detention was unreasonable and lacking in probable cause; (3) the removal of the package to the Northern District of Ohio was unlawful; (4) the omission of the circumstances resulting in the delivery of the package to the Northern District of Ohio establishes a violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); (5) the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), cannot apply if a judicial officer issued a search warrant in the absence of legal authority. The Court will address these issues *seriatim*.

### 1. *Initial Detention of the Package*

■ As noted *supra*, the Supreme Court in *Van Leeuwen* held that a law enforcement official must have a reasonable suspicion that a package contains contraband in order to detain the article. 397 U.S. at 252–253, 90 S.Ct. 1029. As further explained in *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the agent or inspector must have "some minimal level of objective justification" to detain a package.

Inspector Long received a call from Chief Deputy Sheriff Olin Martin who stated that he suspected Defendant Bailey of receiving methamphetamines in the mail from Southern California. After placing a mail watch, Long shortly thereafter received a second call from a postal employee describing a package en route to Bailey's residence. The package was from Southern California and was bulky. The package was an express mail item, guaranteeing delivery within two days. The sender and recipient were both individuals as opposed to business enterprises. The return address was incomplete in that no street number of any kind was indicated. The package was sent from Southern California. According to Long, each of those details were part of a profile as to pack-

ages more likely to contain illegal drugs than shipping articles in general. Further, the description of the package and its origin to give to Long corroborated the information given to Long by Chief Deputy Martin.

The Court concludes that those circumstances constituted reasonable suspicion sufficient to justify a detention of the package.

## 2. Length of Detention

The defendant contends that the detention, if justified in its inception, became unreasonable given the length of time which elapsed prior to the establishment of probable cause or the issuance of a search warrant.

█ The undisputed evidence of record establishes that the package was detained sometime on Saturday, December 20, 1999. Within twenty-four hours, a drug sniffing dog had alerted on the package. Within forty-eight hours, a magistrate judge had issued a search warrant. Inspector Long knew that the Belmont County Sheriff's office had no drug detecting canine unit. He was unaware of any other canine units in the area. He directed the Bellaire Post Office to express mail the package to him in Cleveland.

These circumstances are analogous to those found in *United States v. Aldaz, supra*. With no canine unit known to be in the immediate vicinity of the post office, a short delay caused by the transporting of the package to Cleveland, where it was promptly subjected to a canine sniff, was not unreasonable. Unlike the circumstances in *People v. Shapiro, supra*, the inspector was unaware of any nearby canine unit which could have promptly performed a search without shipment of the package. While Long admitted he made no efforts to locate a canine unit in Belmont County, he had been made aware that the Sheriff's office did not have one.

It was not unreasonable on a Saturday to then direct that the package be shipped to Cleveland where he knew a canine unit was available.

█ Furthermore, from the facts presented at the hearing, the inspector used diligence in detaining the package, retrieving it the next day on a Sunday morning before 7:00 a.m., and arranging a canine sniff by 7:30 a.m. The fact that the inspector did not seek a search warrant on a Sunday for a package within his exclusive control is not, in this Court's view, an indication of a lack of diligence as much as it is local custom. The next business day, the inspector promptly obtained a search warrant.

The Court concludes that the forty-eight hour duration of the detention prior to the obtaining of the search warrant was not unreasonable under the circumstances of this case.

## 3. Removal of the Package to Another Judicial District

█ Defendant Bailey contends that the shipment of the package from Bellaire to Cleveland for purposes of ultimately obtaining a search warrant was unlawful. It is undisputed that Bellaire, Ohio, is within the Southern District of Ohio, while Cleveland is in the territorial jurisdiction of the Northern District of Ohio. The government makes no contention that Bailey committed the charged offenses, or any part thereof, within the Northern District of Ohio. Curiously, neither the parties nor the Court have found case authority specifically addressing this issue. Bailey points out that Crim. R. 41(a) authorizes a magistrate judge to issue a search warrant "for search of property or for a person within the district." 28 U.S.C. § 636 vests authority in magistrate judges "within the territorial jurisdiction" of the district.

These authorities fairly well establish that a judicial officer in one district is generally without authority to issue a search warrant for property in another district.[2] In this case, however, the package in question was *in* the Northern District of Ohio at the time the search warrant was issued. The question is whether a law enforcement agent may lawfully cause the transporting of an item of property to another district and then obtain a search warrant from a judicial officer of that jurisdiction.

At least two fundamental considerations are implicated by the question. The first is that Courts should uniformly discourage forum shopping or judge selection. The removal of property from one district to another to obtain a certain judicial officer or a perceived result is improper and should not be sanctioned.

Alternatively, since the length of detention of property plays a significant role under the Fourth Amendment, federal law enforcement officials should be able to seek crime detection services which are quickly available, even though located in another judicial district. In this case, Inspector Long directed the package to Cleveland, a distance of approximately 150 miles, where he knew he could arrange an expeditious and reliable canine examination. Long testified that he knew of no other canine unit which was both locally available and no evidence has been presented to the contrary. Long also testified that he did not know until sometime after the search warrant was issued that Belmont County was not within the Northern District of Ohio.

There is no factual basis upon which to conclude that the package was taken to Cleveland for the purpose of forum shopping or judge selection. The inspector had a legitimate reason to want the package inspected in Cleveland. Unlike the circumstances in *People v. Shapiro,* no local canine unit was available.

Given these circumstances, the Court finds that the fact the package was sent to the Northern District of Ohio at the request of Inspector Long does not render the subsequently issued search warrant unlawful. The property to be searched was within the district served by the issuing magistrate judge as required by Crim. R. 41(a).

### 4. Application of Franks v. Delaware

■ Bailey contends that the search warrant was unlawfully issued, since Long failed to describe how the property was transported to Cleveland. In *Franks v. Delaware,* 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that if a search warrant is issued based upon perjured testimony or statements made in reckless disregard for the truth, the search warrant is void and the results of the search suppressed.[3]

Bailey contends that Long failed to include in his affidavit the fact that Long caused the package to be sent from Bellaire to Cleveland. The affidavit recites that "The package is currently in my possession in Cleveland, Ohio." The affidavit also recites the complete address of the Bailey residence and refers to Bellaire, Ohio.

---

**2.** Crim. R. 41(a) provides for an exception for property which "might move outside the district before the warrant is issued."

**3.** *Franks* also establishes the procedure to be followed in which a defendant may in limited circumstances "traverse the affidavit" and seek or present information beyond the content of the search warrant affidavit. Here, the only facts involved are essentially undisputed and relate to the transporting of the package to Cleveland.

Long testified that at the time he signed the affidavit he did not know that Bellaire, Ohio was in the Southern District of Ohio. His affidavit contains no statement which is allegedly false. Bailey simply contends that Long misled the magistrate judge by failing to describe the cross-district transfer of the package. Because Long was unaware that the transfer crossed district lines, the Court finds that the affidavit was not intended to be misleading through such omission and the information otherwise contained in the affidavit was factually accurate. Based upon such conclusions, a *Franks v. Delaware* type challenge to the search must fail. Finally, because this Court has concluded that a good-faith, cross-district transport of the package was lawful, had such information been included in the affidavit, based upon the reasoning *infra*, a valid search warrant could still have been issued by a judicial officer in Cleveland.

For these reasons, the Court concludes that Bailey has failed to establish that the affidavit in support of the search warrant was based upon perjured testimony or a deliberate omission which could have wrongfully caused a search warrant to issue.

### 5. *Application of United States v. Leon*

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1994), the United States Supreme Court recognized an exception to the exclusionary rule originally set forth in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Court concluded that application of the exclusionary rule to the results of searches obtained after the issuance of a search warrant by a judicial officer does not advance the deterrent effect otherwise assumed by the exclusionary rule. Instead, application of the exclusionary rule in such circumstances would in no way deter police conduct, but would instead "punish the errors of judges and magis-

trates." *Id.* at 916, 104 S.Ct. 3405. The Court held that

> ... [W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope... there is no police illegality and thus nothing to deter.... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 920, 921, 104 S.Ct. 3405 (internal citations omitted).

■ The exception to the exclusionary rule set forth in *Leon* does not apply if a magistrate judge issued a warrant based upon information set forth in an affidavit that was false, in reckless disregard of the truth, or contained a deliberate material omission in violation of the rule set forth in *Franks v. Delaware, supra.* Further, the exception in *Leon* does not apply if the issuing judicial officer was without legal authority to issue such order.

As discussed above, this Court concludes that Inspector Long did not intend to mislead the issuing magistrate judge as to information omitted from his affidavit filed in support of the search warrant. Bailey further submits that because the package was taken to another judicial district, Magistrate Judge Perelman was without legal authority to issue the warrant.

Bailey contends that the decision in *United States v. Scott*, 260 F.3d 512 (6th Cir.2001) prevents application of the *Leon* exception. In *Scott*, police officers sought a search warrant from a retired state judge whose term of judicial office had expired. The Court of Appeals held that since the judge possessed no legal authority by which he could issue a valid warrant, the search warrant was void and evidence seized in conformity with the warrant was necessarily excluded. The Court of Appeals held that the exception created in

*Leon* did not apply to a warrant issued by a person lacking in "requisite legal authority." *Id.* at 515. The Court noted that "*Leon* presupposed that the warrant was issued by a magistrate or judge clothed in the proper legal authority, defining the issue as whether the exclusionary rule applied to 'evidence obtained by officers acting in reasonable reliance on a search warrant *issued by a detached and neutral magistrate* but ultimately found to be unsupported by probable cause'" *Id.* at 513 (citation omitted) (emphasis in original).

In this case, Bailey claims that because the property contained in the package was taken from the Southern District to the Northern District of Ohio, the magistrate judge lacked the requisite legal authority to issue the search warrant. As discussed above, this Court holds to the contrary. Further, it is clear that Magistrate Judge Perelman was duly appointed and serving as a magistrate judge at the time the search warrant was issued. In addition, the property subjected to the search was located within the district to which the magistrate judge has been appointed.

Consequently, the Court concludes that, assuming *arguendo* the search warrant was unlawfully issued, Inspector Long had a right to rely upon the warrant in conducting a search. Any error in obtaining the search warrant is therefore subject to the exclusionary rule exception set forth in *Leon.*

### IV.

Because the Court finds that the search warrant was properly issued and the package lawfully opened and searched, Bailey's Motion to Suppress is DENIED. The Motion of Defendant Lambert raises the same issues as those in Bailey's motion. Further, the Government contends that Lambert lacks standing to challenge the search.

Given the Court's resolution of the same issues raised by Bailey, it is unnecessary to resolve the issue of Lambert's standing. Even if she has standing, her motion must fail for the same reasons that Bailey's is denied.

### V.

Based upon the foregoing, the Motion to Suppress filed by Defendants Bailey and Lambert are **DENIED.**

**IT IS SO ORDERED.**