# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2087
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa |
| Jose Manuel Morones, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 21, 2003

Filed:  January 21, 2004
_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN and MURPHY, Circuit Judges.
_____

BOWMAN, Circuit Judge.

Jose Manuel Morones appeals from a final judgment entered in the District Court[1] upon his conditional guilty plea to one count of possession of methamphetamine with intent to distribute. The District Court sentenced Morones to forty-six months in prison and three years of supervised release. For reversal,

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

Morones argues that the District Court erred in denying his motion to suppress. We affirm.

On January 3, 2002, Deputy Rick Swigart of the San Bernardino County, California, Sheriff's Department obtained a warrant to search a package that he had detained at the Federal Express (FedEx) facility in Rialto, California. Upon executing the search warrant, Swigart found methamphetamine hidden inside a VHS tape. After obtaining court authorization, Swigart reassembled the package with its original contents plus a transmitter. The next day, the package was delivered as addressed, to Morones's apartment in Dubuque, Iowa, where Morones's wife signed for it.

When the transmitter alerted law enforcement officers that the package had been opened, they entered the apartment. The officers found Morones and his wife and child in a bedroom and most of the contents of the package, including the broken transmitter, on the bed. The VHS tape, still containing the methamphetamine, was retrieved from under a bathroom sink. Morones thereafter made incriminating statements to the officers regarding his involvement with methamphetamine.

Morones was indicted on June 7, 2002, on one count of possession of methamphetamine with intent to distribute. On August 8, 2002, he filed a motion to suppress the evidence obtained as a result of the search of the FedEx package, asserting that the package was seized without reasonable, articulable suspicion, in violation of his Fourth Amendment rights. The motion was referred to a Magistrate Judge.[2] A stipulated record established the material facts.

On January 2, 2002, Swigart was conducting a random parcel inspection at the FedEx facility in Rialto when he removed a white package from the outbound

_____

[2]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa.

-2-

conveyor belt. The package bore a handwritten label revealing the following: the sender had paid cash; the package was being shipped "priority overnight"; the sender was identified as "Juan Sanchez" in Rialto, California; the recipient was identified as "Avraham Sanchez" in Dubuque, Iowa; and neither the sender's nor the recipient's telephone number was provided. After visually inspecting the package, Swigart set it aside with several "control" packages. He then went to his vehicle to retrieve his narcotics-trained canine. When allowed to sniff the packages, the dog alerted to the Sanchez package.

Swigart obtained a warrant to search the package the next day, January 3, 2002. In his affidavit supporting the warrant application, Swigart indicated, among other things, that he had been employed at the San Bernardino County Sheriff's Department since 1985, that he was currently assigned to the Narcotics Division, and that he had completed narcotics investigation courses presented by the Department of Justice and the Drug Enforcement Administration. Swigart also attested that he had been a narcotics canine handler since May 1999, that his drug dog was certified in the detection of various narcotics, and that the dog had successfully detected narcotics nearly 1400 times within the preceding five years. His drug dog had alerted to approximately ninety-five percent of the packages that Swigart had determined to be suspicious while working drug interdiction. Swigart said he pulled the Sanchez package from the conveyor belt for the dog sniff because of these observations: the package was shipped "priority overnight," the shipper paid cash, no phone numbers were listed, and the sender and receiver had the same last name. Swigart explained that, in his experience, these last two practices were employed by those shipping illegal substances to prevent identification of the sender or recipient. In a separate affidavit that Swigart prepared after Morones had filed his motion to suppress, Swigart further stated:

> "Priority overnight" deliveries, which typically cost $30-$50 for a small package, are significantly more expensive than the more often used

"2-day" delivery process. As such, priority overnight mailings are most commonly used by businesses, with pre-printed air bill labels and visible account information reflected on the air bill. In my experience, a very small percentage of legitimate "priority overnight" customers use cash to send their packages. In my experience, where cash is paid, the legitimate overnight customers nearly universally list appropriate contact information, such as telephone numbers, so that they may be reached in the event the package is lost.

Affidavit of Rick W. Swigart ¶ 5.

Upon review of the stipulated record, the Magistrate Judge concluded that the package was not seized for Fourth Amendment purposes when Swigart lifted it from the belt because he had not, at that time, interfered with the delivery of the package. The Magistrate Judge determined that the package was seized when Swigart put it with the control packages and further concluded that Swigart had reasonable, articulable suspicion to do so. The seizure was therefore constitutionally permissible. The Magistrate Judge recommended that Morones's motion to suppress be denied. Upon review, the District Court adopted the Magistrate Judge's reasoning and denied Morones's motion to suppress. Morones thereafter conditionally pleaded guilty to one count of possession of methamphetamine with intent to distribute, reserving his right to appeal the denial of his motion to suppress.

On appeal, Morones argues that the District Court erred in concluding that Swigart reasonably suspected that the package at issue contained narcotics at the moment of the seizure, which he contends occurred "when Deputy Swigart removed [the package] from the outbound conveyor belt and placed it in 'another area' of 'control' packages for examination by a canine." Brief of Appellant at 6. In response, the government first contends that no seizure occurred at the time the package was set aside because "there is no evidence that the brief 'stop' of the Federal Express envelope for the canine sniff in any way would have delayed delivery of the package if the dog did not alert." Brief of Appellee at 13. According to the

government, the package was not seized until the drug dog alerted to it and Swigart held it while he sought a search warrant.

We disagree. Swigart exercised "meaningful interference" with Morones's "possessory interests" in the package—that is, he seized it—when he removed it from the mail stream and held it for the dog sniff. United States v. Jacobsen, 466 U.S. 109, 113 (1984); see also United States v. Gomez, 312 F.3d 920, 923 n.2 (8th Cir. 2002) (noting as to cases cited that "[i]n each case, there was no seizure until the respective officers exerted dominion and control over the packages by deciding to go beyond a superficial inspection of the exterior of the packages and to detain the packages for further inquiry into characteristics that could not be observed by merely holding the package"). That leaves only the question whether the District Court erred in concluding that Swigart had reasonable and articulable suspicion that the Sanchez package contained contraband when he seized it. We review de novo the District Court's legal conclusion that Swigart did not violate Morones's Fourth Amendment rights. See United States v. Demoss, 279 F.3d 632, 634 (8th Cir. 2002) (standard of review).

Morones maintains that under this Court's Fourth Amendment jurisprudence, the facts known to Swigart, whether considered alone or in combination, are insufficient as a matter of law "to justify detention" of the package. Brief of Appellant at 8. Relying on some of our previous package-seizure cases, Morones argues that in order for Swigart to have had a reasonable suspicion that the package in question contained narcotics, some additional "red flag" factor—such as heavy taping, unusual weight for the size, a strong smell of perfume—was necessary. Id. We disagree. "The determination of whether a government agent's suspicion is constitutionally reasonable is exceedingly fact-specific. We examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be 'understood by those versed in the field of law enforcement.'" Demoss, 279 F.3d at 636 (quoting United States v.

Cortez, 449 U.S. 411, 418 (1981)).  In these circumstances, we hold that the characteristics of the Sanchez package, as articulated and explained by Swigart, considered in light of Swigart's experience in drug interdiction, amount to the reasonable suspicion necessary to constitutionally seize the package.

In support of his argument, Morones relies largely on our opinion in United States v. Vasquez, 213 F.3d 425 (8th Cir. 2000).  In Vasquez, we noted in dictum that these factors did not amount to the reasonable suspicion necessary to seize a package: the package "was incorrectly addressed even though the sender and recipient had the same last name; the air bill was handwritten, marked 'priority overnight,' and contained no account number; and the package was sent from California."  Id. at 426.  Here, Swigart not only identified additional characteristics of the package that generated suspicion but also explained their importance in light of his knowledge of particular criminal practices.  See United States v. Walker, 324 F.3d 1032, 1037 (8th Cir.), cert. denied, 124 S. Ct. 247 (2003).  The Vasquez Court did not discuss the experience of the officers involved and did not relate any explanation from the officers as to why they found the factors suspicious.[3]  Accordingly, the dictum from that opinion does not shake our conclusion that Swigart had the requisite reasonable suspicion to justify the seizure of the Sanchez package.

The judgment of the District Court is affirmed.

_____

_____

[3]The case was decided on the issue of when the package was seized, that is, the Court held that there was no seizure until *after* a drug dog alerted to the package, which provided all the reasonable suspicion necessary to detain the package.