# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2902

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Robert Thomas Logan, Jr., | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted:   January 13, 2004

Filed:   March 30, 2004

_____

Before BYE, LAY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

The government appeals the district court's order granting Robert Thomas Logan, Jr.'s motion to suppress evidence. We reverse and remand.

I

On July 18, 2000, Detective James Flynn of the Los Angeles Police Department was dispatched to Mail Box Services Plus, a commercial mail receiving agency (CMRA), in Sherman Oaks, California to investigate a suspicious package. Detective Flynn examined the package and determined it was being sent from the Los

Angeles metropolitan area to Sound Masters, 6614 Clayton Rd., St. Louis, Missouri. The airbill carried the typewritten name and address of Mail Box Services Plus as sender and the handwritten name and address of Sound Masters as consignee. Flynn also noted the package was scheduled for second-day air delivery to Sound Masters in care of a St. Louis Mail Boxes Etc. facility. At Flynn's request, a drug-sniffing dog was dispatched to the location and alerted on the package.

Detective Flynn has been in law enforcement since 1989. Since 1994, he has worked as a narcotics investigator for the LAPD and has extensive experience with the illegal drug trade. At the time of these events, Flynn was assigned to the LAPD's parcel interdiction squad. Flynn testified he detained the package because, based on his extensive training and experience, it fit several characteristics of the profile used by law enforcement to interdict packages containing drugs. In particular, he testified Los Angeles is a source city for narcotics and St. Louis is a city to which drugs are frequently shipped. Flynn further testified drug traffickers commonly use second-day air delivery to ensure rapid reliable delivery and limit the time during which packages are exposed to possible detection. Additionally, he testified drug traffickers frequently ship packages via CMRAs to conceal the sender's identity, and prefer to use handwritten labels that can be filled out moments before the package is deposited with the CMRA to further lessen the chances of detection. On cross-examination, Flynn testified second-day air delivery is one of six methods of shipment offered by FedEx, with priority next-day and standard next-day being faster. He acknowledged choosing second-day air delivery exposes a package to scrutiny for a longer period of time and his affidavit stated next-day air delivery is the normal method used by drug traffickers.

After the drug-sniffing dog alerted, police obtained a search warrant and found a stereo speaker inside the package containing approximately one kilogram of cocaine. The package was allowed to continue on to the St. Louis Mail Boxes Etc., where police arranged for a controlled delivery. In the process of arranging for the

controlled delivery, police came across a second package bearing nearly the same characteristics as the first and arranged for a controlled delivery of both packages. Later that same day, Wendy Hull came to Mail Boxes Etc. and retrieved the packages. Police arrested her and subjected the second package to a dog sniff. After the dog alerted, police obtained a search warrant and discovered approximately one kilogram of cocaine hidden inside a stereo speaker.

A search of Hull's person uncovered a mailing receipt for yet a third package which led to the seizure of a package containing $19,050 mailed from St. Louis to a Los Angeles CMRA. Hull cooperated with police and led them to Logan who was arrested and indicted on one count of possession of over 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Logan moved to suppress all the evidence arguing police did not have a reasonable suspicion based on articulable facts sufficient to detain the first package. Because the search of the first package led to discovery of the subsequent packages, Logan argued the evidence discovered in the second and third packages should also be suppressed. The magistrate judge recommended denying the motion, however, the district court rejected the recommendation and suppressed the evidence. The government moved for reconsideration arguing the seizure was justified because police had relied in good faith on the search warrant. The district court determined this argument, raised for the first time in the motion for reconsideration, had been waived. The government now appeals.

II

We review a district court's decision to grant a suppression motion de novo while reviewing the underlying factual determinations for clear error. United States v. Walker, 324 F.3d 1032, 1036 (8th Cir. 2003).

-3-

A.    Seizure

The government first contends subjecting the package to a dog sniff was not a seizure requiring reasonable suspicion. We disagree. Under our existing precedent it is clear this package was seized for Fourth Amendment purposes when Detective Flynn detained it and subjected it to a canine sniff. See Walker, 324 F.3d at 1036 (holding a package was seized when it was "moved . . . to a separate room for a canine sniff . . . ."); United States v. Morones, 355 F.3d 1108, 1111 (8th Cir. 2004) (holding a package was seized when it was removed from the mail stream and held for a dog sniff).

B.    Reasonable Articulable Suspicion

Having concluded the package was seized we next consider whether the seizure was supported by a reasonable and articulable suspicion.

To support a seizure, "[l]aw enforcement authorities must possess a reasonable suspicion based on articulable facts that a package contains contraband before they may detain the package for investigation." United States v. Johnson, 171 F.3d 601, 603 (8th Cir. 1999) (citing United States v. Van Leeuwen, 397 U.S. 249, 252-53 (1970)). "Reasonable suspicion exists when, based on the totality of the circumstances, an officer possesses a particularized and objective basis for suspecting that the package contains contraband, that is, more than an inchoate and unparticularized suspicion or hunch." Id. (internal quotations and citation omitted). The reasonable articulable suspicion standard anticipates a fact-specific inquiry examining the totality of the circumstances informing a law enforcement officer's determination of reasonable suspicion. Walker, 324 F.3d at 1037 (citing United States v. Terriques, 319 F.3d 1051, 1056 (8th Cir. 2003)). Further, "[l]aw enforcement officers are permitted to draw 'inferences and deductions that might well elude an untrained person.'" Johnson, 171 F.3d at 604 (quoting United States v.

-4-

Cortez, 449 U.S. 411, 418 (1981)). The Fourth Amendment, however, requires police "to explain *why* the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed." Id. (citing Cortez, 449 U.S. at 418-22) (emphasis in original).

The district court determined the police failed to articulate a sufficient basis to warrant seizing the first package. Specifically, the district court noted Detective Flynn's affidavit stated drug traffickers typically send packages by priority next-day or standard next-day delivery, but this package was sent second-day air delivery. Further, the district court pointed to the absence of evidence explaining why the Mail Box Services Plus employee believed the package was suspicious in the first instance. Finally, the district court distinguished this case from cases where reasonable suspicion had been established because in those cases there were additional characteristics supporting the finding, e.g., the package emitted a heavy odor of perfume, was marked fragile and heavily taped, bore an incorrect address, or the airbill account number was missing.

Detective Flynn articulated the following characteristics he determined were consistent with the drug-package profile: 1) the package was shipped from Los Angeles, a drug source city; 2) the package was shipped to St. Louis, a drug target city; 3) the package was shipped from a CMRA; 4) the package was shipped second-day air delivery; 5) the package was shipped to a CMRA; and 6) the name and address of the recipient were handwritten. Each of these factors, when considered alone, is consistent with innocent mail use. Our inquiry, however, does not require us to "rule out the possibility of innocent conduct." Walker, 319 F.3d at 1057 (quoting United States v. Arvizu, 534 U.S. 266, 276 (2002)). When viewed in the aggregate by a trained law enforcement officer these factors give rise to the objectively reasonable suspicion needed to justify a dog sniff. Detective Flynn, relying on his experience and training, explained the relevance of the independently insignificant facts, and, notwithstanding the distinction between next-day delivery

and second-day delivery, demonstrated the reasonable suspicion required under the Fourth Amendment. Considering the totality of the circumstances, we find Detective Flynn had a reasonable suspicion based on articulable facts sufficient to detain the package and subject it to a dog sniff.

III

Accordingly, the district court's suppression order is vacated and the case is remanded for further proceedings, including the denial of Logan's motion to suppress.

SMITH, Circuit Judge, dissenting.

I concur with the majority's determination that the package was seized–for Fourth Amendment purposes–when Detective Flynn detained it. However, I must respectfully dissent from the court's determination that Detective Flynn's knowledge at the time of the seizure justified a reasonable, articulable suspicion warranting the detention. Based upon the totality of the circumstances, I do not believe the facts satisfy the threshold requirement.

Reasonable suspicion exists when, based on the totality of the circumstances, an officer possesses a "particularized and objective basis" for suspecting that the package contains contraband, that is, more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The Supreme Court has made it particularly clear that "based on the whole picture, the detaining officers must have a particularized and objective basis for suspecting a particular [detained package] of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–418 (1981); *accord United States v. Johnson*, 171 F.3d 601, 604 (8th Cir. 1999). However, "[c]onduct typical of a broad category of innocent people provides a weak basis for suspicion." *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir. 1992)

(citation omitted). While "conduct which would be wholly innocent to the untrained observer . . . might acquire significance when viewed by an agent who is familiar with the practices of drug [traffickers] and the methods used to avoid detection . . . it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." *United States v. Beck*, 140 F.3d 1129, 1137 (8th Cir. 1998) (internal citations omitted).

Law enforcement officers are permitted to draw "inferences and deductions that might well elude an untrained person." *Cortez*, 449 U.S. at 418. However, those inferences and deductions must be explained. *Johnson*, 171 F.3d at 604 . Specifically, the Fourth Amendment requires an officer to explain why the officer's knowledge of particular criminal practices gives special significance to the apparently innocent facts observed.[1] Detective Flynn's explanation is inadequate.

Detective Flynn testified, and the majority notes, that he relied on six factors to detain the package for a search. These included: 1) the package was shipped from Los Angeles, a drug-source city; 2) the package was shipped to St. Louis, a drug-target city; 3) the package was shipped from a CMRA; 4) the package was shipped second-day air delivery; 5) the package was shipped to a CMRA; 6) the name and address of the recipient were handwritten. In this case, the district court discounted each of these factors to find that Detective Flynn did not have a reasonable,

---

[1]*See Cortez*, 449 U.S. at 418–422 (particular inferences drawn by experienced Border Patrol officers justified the stop at issue); *Ornelas v. United States*, 517 U.S. 690, 700 (1996) (officer relied on experience to determine that loose panel below backseat armrest suggested storage of drugs rather than wear and tear); 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 143 (3d ed.1996) (because the officer's inferences and deductions were fully explained at the suppression hearing, *Cortez* correctly held that "a particularized and objective basis" existed for the stop).

articulable suspicion to seize the package. I do not believe the district court clearly erred in its factual conclusions.

Because these cases are intensely fact specific, comparison to other cases is difficult. However, in four recent decisions, we addressed circumstances in which we determined that officers had reasonable, articulable suspicion to seize a package. In these cases, each package possessed additional factors beyond the general characteristics of ordinary packages. *See*, *e.g.*, *United States v. Morones*, 355 F.3d 1108, 1110 (8th Cir. 2004)[2] (package was sent by overnight delivery, shipper paid cash, no phone numbers were included, labels were handwritten, sender and recipient had same last name, package sent from source state); *United States v. Walker*, 324 F.3d 1032, 1037 (8th Cir. 2003) (package was delivered to airport by a person driving a vehicle rented by an individual who lived only sixty miles from airport, payment made in cash, and labels were handwritten); *United States v. Terriques*, 319 F.3d 1051, 1056 (8th Cir. 2003) (package was heavily taped, mailed from a high-crime neighborhood, and mailed from main post office rather than postal station closer to sender's address); *United States v. Gomez*, 312 F.3d 920, 923 (8th Cir. 2002) (package was heavily taped and marked "FRAGILE," was of excessive weight for its size, and was mailed for overnight weekend delivery); *United States v. DeMoss*, 279

---

[2] The defendant in *Morones* argued that a package must contain additional "red flag" factors in order to raise reasonable, articulable suspicion with authorities. *Morones*, 355 F.3d at 1112. In dicta, we rejected this contention by noting that we examine the totality of the circumstances in light of the investigating officer's experience. *Id.* However, we then went on to note that the officer in *Morones* identified "additional characteristics of the package that generated suspicion," including that: 1) the package was mailed by "priority overnight," which he indicated was typically used by businesses that provided the necessary contact information; 2) the sender paid cash; 3) the sender and recipient had the same last name; 4) the package was mailed from California; 5) neither the sender's nor recipient's telephone numbers were provided; 6) the label was handwritten. *Id.*

F.3d 632, 636 (8th Cir. 2002) (package was heavily perfumed, heavily taped with all seams sealed, and no phone numbers were listed for sender or recipient).

The instant facts are considerably less persuasive. First, Detective Flynn did not originally identify the package. Rather, an undisclosed mail clerk flagged it, and we have no information, as we did in *Terriques* for example, about this person's experience or why this person identified this package for inspection. In addition, Detective Flynn possessed limited experience in mail-center drug interdiction–while he had worked in narcotics investigation for several years, he had worked in mail-center interdiction for only a few months before this incident. The district court recognized this and determined that Detective Flynn's experience played a minor role in the identification of the package because the package was identified by an undisclosed mail clerk. The mail clerk merely called the police, and Detective Flynn went to the mail center with the drug dog to conduct a canine sniff of that particular package.

Detective Flynn's explanation of these six innocuous characteristics did not amount to a reasonable, articulable suspicion. To begin with, Detective Flynn erred in suggesting that second-day air delivery, such as that used in this case, was a preferred method of delivery for drug dealers. The majority acknowledges as much, but disregards the difference that this error makes in this case. We have acknowledged in numerous cases, including those listed above in which reasonable suspicion was found, that "overnight" or "next-day" air delivery was the preferred method of delivery for drug traffickers. In contrast, "second-day" air delivery is typically not the type of delivery used by drug traffickers. This mistake highlights Detective Flynn's inexperience in package drug interdiction. Without this factor, the remaining factors amount to nothing more than a combination of unsuspicious

characteristics.[3] We should require more to subject items placed in legitimate commerce to seizure and subsequent search.

I, therefore, respectfully dissent from this portion of the decision.

_____

---

[3] *See United States v. Vasquez*, 213 F.3d 425 (8th Cir. 2000) (characteristics were insufficient to raise a reasonable, articulable suspicion where package was incorrectly addressed although sender and recipient had same last name, label was handwritten, package was sent "priority overnight," it contained no account number, and it was sent from California); *Johnson*, 171 F.3d 601 (characteristics were insufficient to support seizure where package labels were handwritten, sender's and receiver's addresses were the same, package was mailed from California, and return address ZIP code was different from accepting ZIP code).