2005 ND 140

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Dale Matt RESSLER, Defendant and Appellant.**

**No. 20040327.**

Supreme Court of North Dakota.

July 25, 2005.

Allen M. Koppy, State's Attorney, Mandan, ND, for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Dale Matt Ressler appealed an order deferring imposition of his sentence for possession of drug paraphernalia. Ressler entered a conditional plea of guilty to the charge, reserving the right to appeal the denial of the suppression of evidence. We hold the district court erred in refusing to suppress evidence, and we reverse Ressler's conviction and order deferring imposition of his sentence and remand to the district court to allow Ressler to withdraw his guilty plea.

[¶ 2] On February 24, 2004, Ressler brought a box to a private shipping outlet, We Ship, located in Mandan, North Dakota. Ressler wanted to send his package to his brother in California through United Parcel Service's ("UPS") next-day-air service. The owner of We Ship, Kent Danielson, became suspicious of Ressler, who seemed nervous, kept looking over his shoulder, and was shipping an uninsured, next-day-air package whose weight did not coincide with its stated contents. Danielson opened the package after Ressler left the store. Danielson discovered numerous magazines, some of which had scotch tape around their three open sides. Danielson cut one of the magazines open and found money in various pages throughout the magazine. The amount of money in this magazine was later determined to be $870. Danielson also examined a second magazine, which was not taped, but it did not contain any currency. Danielson called the Mandan Police Department.

[¶ 3] Officer Ray Eisenmann arrived at the store and observed what the store owner had uncovered. According to Officer Eisenmann, there were several magazines, a plastic bag, newspaper wrapping, packaging materials, and the money Danielson discovered inside the first magazine. Danielson also told Officer Eisenmann his suspicions about Ressler.

[¶ 4] Officer Eisenmann wanted to conduct a canine sniff on the package, but the We Ship store was too small to conduct a valid canine test. Officer Eisenmann transported Ressler's package to a nearby law enforcement center, and the canine alerted on the relevant box. Following this positive test result, Officer Eisenmann inventoried the full contents of the box by

opening the remaining magazines, and he discovered a total of $9,800 in bills. Police later conducted a garbage search at Ressler's residence and found various items of drug paraphernalia.

[¶ 5] Based on the evidence from the garbage search, police obtained and executed a search warrant for Ressler's residence on February 25, 2004, and uncovered additional drug paraphernalia. The State charged Ressler with possession of the drug paraphernalia found in his home.

## I.

[¶ 6] Ressler argues the steps taken by police violated his constitutional right against unreasonable searches and seizures. Ressler claims a sender of a package retains a reasonable expectation of privacy in his parcel, and he notes he had a continuing expectation of privacy in his package extending beyond Danielson's limited, private-party search. Ressler asserts the initial government seizure of his package was without a search warrant or probable cause. Ressler claims Officer Eisenmann needed probable cause to support his actions because Officer Eisenmann exercised dominion and control over the package and its contents when he removed the shipment to the law enforcement center.

[¶ 7] Further, Ressler argues that, even after establishing probable cause to search through the canine sniff, the government nonetheless failed to obtain a search warrant before proceeding with its inventory search. Ressler contends an inventory search should not be used as a subterfuge for criminal investigation. Finally, Ressler argues the evidence from his trash and home, which was derived from the illegal seizure and search of his package, should be suppressed as fruit of the poisonous tree.

[¶ 8] In contrast, the State argues the police conduct in this case did not violate Ressler's constitutional rights. Accordingly, the State denies suppression of the evidence discovered during the search of Ressler's home is required. The State notes the initial search of Ressler's package was carried out by a private actor, the owner of the shipping store, and not a government official. The State asserts removal of the package from the shipping store to the law enforcement center for canine testing was a constitutionally reasonable field test because it did not further compromise any legitimate interest Ressler had in his package that had not already been breached by Danielson's private search, and the removal of the package to the law enforcement center was based upon the reasonable suspicion gained at the shipping store. The State contends the initial detention and movement of Ressler's package need only be supported by reasonable suspicion, not probable cause.

[¶ 9] The State opines that, after the canine identified Ressler's package, the Officer had probable cause to inventory the box and, as the events leading up to the garbage search and the issuance of the search warrant for Ressler's residence were in accordance with constitutional protections, there is no basis upon which to suppress the evidence discovered in Ressler's home.

## A.

[¶ 10] The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), provides "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." Ressler's

package, which was delivered to We Ship for private interstate shipment, was an "effect" within the meaning of the Fourth Amendment. *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Analyzing the events as they unfolded, the private-party search of Ressler's shipment, which was not done at the behest of a government official, does not implicate any constitutional protections. *Id.* at 114–15, 104 S.Ct. 1652. Further, the record reveals Danielson displayed what he had uncovered to Officer Eisenmann, and there is no indication Officer Eisenmann exceeded the scope of the private-party search during his initial examination at We Ship. *Id.* at 115, 104 S.Ct. 1652.

## B.

■ [¶ 11] Officer Eisenmann was suspicious of Ressler's shipment, and he determined to move the package to a nearby law enforcement center for a canine test. Danielson told Officer Eisenmann of Ressler's peculiar behavior. Officer Eisenmann saw what appeared to be a large quantity of money shipped inside a taped magazine, and, when viewed through the prism of his training in narcotics enforcement, Officer Eisenmann had grounds for suspicion. At oral argument, the State's Attorney acknowledged the suspicion only amounted to reasonable suspicion, not probable cause. Ressler argued that even reasonable suspicion was lacking. Given the facts of the case, we conclude Officer Eisenmann's suspicion was reasonable.

■ [¶ 12] Initially we must decide whether Officer Eisenmann's movement of the package constituted a seizure at all. If no seizure occurred, police do not need any level of suspicion to support their conduct. Defining a seizure as "some meaningful interference with an individual's possessory interests," *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), some courts have held no seizure occurs where the government's investigation, such as a canine test, would not delay the shipment of an individual's package if the test returned negative. *United States v. Francisco Zavala,* 2003 WL 431636, at * 1–2, 2003 U.S. Dist. LEXIS 2521, at * 5–6 (E.D.Pa.2003) (collecting similar cases); *see also* 3 W. LaFave, Search and Seizure § 9.6, p. 71 (Supp. 1982) (noting *United States v. Van Leeuwen,* 397 U.S. 249, 252–53, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), which involved a prolonged detention, but no search, of a shipped parcel, "was an easy case for the Court because the defendant was unable to show that the invasion intruded upon either a privacy interest in the contents of the packages or a possessory interest in the packages themselves") (cited in *United States v. Place,* 462 U.S. 696, 705 n. 6, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). Another court has utilized a contract-based theory of possessory interests when dealing with shipped packages, holding the critical time runs from when the defendant has a contractual right to receive the package to when police establish probable cause to seize the package. *United States v. La France,* 879 F.2d 1, 7 (1st Cir.1989).

[¶ 13] Under this rationale, it is arguable whether Officer Eisenmann's movement of Ressler's package to the law enforcement center impinged Ressler's possessory interests or constituted a seizure. Officer Eisenmann arrived at We Ship around 11:00 a.m. on February 24, 2004, briefly after Ressler dropped off his shipment. The package was moved to the law enforcement center shortly thereafter and it does not appear a significant delay occurred before police conducted the canine test. Had the canine sniff been negative, the record does not indicate whether the pack-

age could have nonetheless arrived at its destination on time, but the early time of day, the speed with which police conducted the canine test, and the close proximity of the law enforcement center and We Ship indicate that on-time delivery might have been plausible.

[¶ 14] There is not universal acceptance of these approaches, however. In *United States v. Morones*, 355 F.3d 1108, 1111 (8th Cir.2004), the court rejected the government's argument that no seizure of a Federal Express package occurred when an officer removed the package from the mail stream and held it for a canine sniff. The government argued the brief stop of the package would not have delayed its ultimate forward progress if the canine did not alert. *Id.* The government claimed a seizure did not occur until after the canine alerted to the package and the officer made the decision to obtain a search warrant. *Id.* The court dismissed this reasoning, holding the officer exercised meaningful interference with the defendant's possessory rights when he held the package pending the canine sniff. *Id.; see also Jacobsen*, 466 U.S. at 120–21 & n. 18, 104 S.Ct. 1652 (agents "clearly" seized a Federal Express package when they took custody of the package at the shipper's facility and exerted dominion and control over the package for law-enforcement purposes; the Court did not find it necessary to determine that an on-time delivery was frustrated before labeling the government's actions a seizure). We believe the *Morones* and *Jacobsen* rationale is sound. It seeks to recognize and validate the minimal, yet ever-present, possessory rights an individual maintains in shipped articles. Further, it provides some mechanism to check what would otherwise be a nearly unrestrained power of government to temporarily confiscate any shipped package.

[¶ 15] The relevant question thus becomes whether Officer Eisenmann, armed with reasonable suspicion, could transport a seized package from We Ship to the law enforcement center for canine testing. We hold reasonable suspicion does not afford police this option. Many courts have noted reasonable suspicion permits government officials to temporarily detain a package pending further investigation, often involving a canine test, that leads to the establishment of probable cause. *See, e.g., United States v. Van Leeuwen*, 397 U.S. 249, 252–53, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *United States v. Fuller*, 374 F.3d 617, 621 (8th Cir.2004); *United States v. Morones*, 355 F.3d 1108, 1111–12 (8th Cir.2004). However, most courts have addressed the detention of a package in the location where reasonable suspicion originated, pending the arrival of a canine unit. *See, e.g., State v. Kesler*, 396 N.W.2d 729, 730–31 (N.D.1986) (suspected packages held at post office pending arrival of out-of-town canine units).

[¶ 16] Some courts have decided cases involving the movement of a package to another location for a canine test based on reasonable suspicion, but few of these courts have explicitly discussed the ramifications of moving such a package or whether it was moved by law enforcement or another entity. *See United States v. Allen*, 990 F.2d 667 (1st Cir.1993) (postmaster transported suspected package to his personal home so police could conduct canine test in private; case decided on other grounds); *United States v. Aldaz*, 921 F.2d 227 (9th Cir.1990) (postmaster sent suspected package from rural Alaska to postal inspector in Anchorage for canine test; court discussed the movement of the package only in terms of the length of detention); *United States v. La France*, 879 F.2d 1 (1st Cir.1989) (police directed Federal Express to deliver a suspected package to their police station for a drug

sniff; case decided on grounds of defendant's lack of possessory interests in package until scheduled time of delivery); *United States v. Dass*, 849 F.2d 414 (9th Cir.1988) (law enforcement authorities sent suspected packages from various Hawaii post offices to a law enforcement center in Hilo for canine inspection; case decided on other grounds); *United States v. Francisco Zavala*, 2003 WL 431636, 2003 U.S. Dist. LEXIS 2521 (E.D.Pa.2003) (suspected package was transported from a Pennsylvania air-mail facility to a Philadelphia post office for canine testing; court held no seizure of package occurred before the canine alerted because no meaningful interference with the defendant's possessory interests occurs where package could be delivered on time if canine test is negative); *United States v. Bailey*, 193 F.Supp.2d 1044 (S.D.Ohio 2002) (post office in a county where canine testing unavailable sent suspected package to a postal inspector in another county for testing; court held the shipment was reasonable because no canine units were present in original location and movement of package from one federal judicial district to another was not done for forum-shopping purposes); *Illinois v. Shapiro*, 177 Ill.2d 519, 227 Ill.Dec. 142, 687 N.E.2d 65 (1997) (suspected postal package was sent from Chicago's O'Hare International Airport to a postal inspector in Missouri for a canine sniff; court held the movement was unreasonable because the ensuing delay in delivery could have been reduced if the police would have acted more diligently in conducting the test in Chicago).

[¶ 17]   Here, we are not troubled by the length of Officer Eisenmann's detention of the package before probable cause was established because it appears the canine sniff occurred shortly after Officer Eisenmann first arrived at We Ship and seized the package. *Compare United States v. Place*, 462 U.S. 696, 708–10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (where a person's liberty interests were implicated by the detention of his luggage, the Supreme Court found a 90–minute delay to be unacceptable) *with Van Leeuwen*, 397 U.S. at 249–50, 252–53, 90 S.Ct. 1029 (Supreme Court approved detention of mailed parcels where probable cause to suspect one of the shipped packages did not exist until the "next morning"). Officer Eisenmann was diligent in arranging the canine test. *See Place*, 462 U.S. at 709, 103 S.Ct. 2637 (discussing the length of detention and the police's diligence in pursuing their investigation in assessing the reasonableness of a seizure on less than probable cause). Rather, we are concerned with the discrete question of whether reasonable suspicion allows for the transportation by law enforcement of a package from the place where suspicion arose to a wholly different venue, here a law enforcement center.

[¶ 18]   The Supreme Court has noted "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by ... the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124 & n. 25, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (discussing *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (involving the detention of a person's luggage on reasonable suspicion)). Here, Officer Eisenmann had reasonable suspicion to suspect Ressler's package, and this level of suspicion would have justified a decision to detain the package at We Ship pending further investigation. By transporting the package, however, police executed the seizure in a manner we believe is contrary to the constitutional prohibition against unreasonable seizures.

▪ [¶ 19]   A seizure of a package based on reasonable suspicion affords gov-

ernment officials less command, dominion, or control over the package than they would possess if executing a full-fledged seizure based on probable cause or a warrant. A contrary conclusion would distend the rationale for a *Terry* stop to a point where it envelops a seizure based on probable cause or a seizure supported by a warrant. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Police could not seize Ressler's package to a greater extent than by placing it in their exclusive control, removing it from the location where it was submitted for shipping, and transporting it to a law enforcement center. This full-fledged seizure required either probable cause supported by an exception to the warrant requirement or a warrant to be valid. *Place*, 462 U.S. at 701–02, 103 S.Ct. 2637; *see Garmon v. Foust*, 741 F.2d 1069, 1073–74 (finding exigent circumstances existed where a shipped parcel could be lost or mistakenly delivered). A *Terry* stop of a package is distinguishable from a full-fledged seizure supported by probable cause, and we hold reasonable suspicion was an inadequate basis upon which to transport Ressler's package to the law enforcement center.

[¶ 20] In its recent decision in *Illinois v. Caballes*, —— U.S. ——, ——, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005), the United States Supreme Court affirmed a canine sniff performed on the outside of a person's automobile while the driver was lawfully seized for a traffic violation. The Court emphasized the sniff did not elongate the otherwise valid traffic stop. *Id.* 125 S.Ct. at 837. One of the inferences to be drawn from this case is that, if police desire to conduct a canine sniff at a traffic stop, they must take the traffic stop as they find it. Similarly, that a valid canine test could not have been done in We Ship does not mean transporting the package to a more accommodating location is acceptable. If police are unable to investigate in a manner consistent with the level of suspicion they possess, the proper result is to cease investigation, not impinge constitutional protections.

## C.

[¶ 21] Although we dispose of this case on the basis of the illegal seizure, we note Officer Eisenmann subjected the package to a canine sniff and an inventory search at the law enforcement center. The Supreme Court has indicated a canine sniff "discloses only the presence or absence of narcotics, a contraband item," and does not "constitute a 'search' within the meaning of the Fourth Amendment." *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Thus, a canine sniff does not, in and of itself, implicate a person's legitimate expectations of privacy. It is also clear that a positive canine test provides probable cause to suspect a package. *See, e.g., United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir.1993) (holding "[a] canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability"). Both parties on appeal agree that positive canine sniffs establish probable cause.

[¶ 22] After establishing probable cause to suspect Ressler's shipment, Officer Eisenmann proceeded to inventory the full contents of the package, without first obtaining a warrant. At this point, Ressler still maintained a legitimate expectation of privacy in the contents of the magazines not inspected during the private-party search. *Cf. United States v. Jacobsen*, 466 U.S. 109, 115, 120–22, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (additional invasions of privacy by the government must be tested by the degree to which they exceed the scope of the private search; package opened by private party could not support any expectation of priva-

cy where private search revealed package "contained contraband and little else"). It is well-established law that probable cause alone does not justify a warrantless search of a package, absent an exception to the warrant requirement. *See Jacobsen*, 466 U.S. at 114, 104 S.Ct. 1652 ("Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package."); *Place*, 462 U.S. at 701, 103 S.Ct. 2637 ("Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.").

[¶ 23] Both the State and the district court argued Officer Eisenmann conducted an inventory search, which is an exception to the warrant requirement. An inventory search is "predicated on the interest in protecting the owner's property while it is in police custody, protecting the police against claims of lost, stolen or vandalized property and protecting the police against danger posed by the inventoried property." *State v. Kunkel*, 455 N.W.2d 208, 211 (N.D.1990). "Limited to these [administrative and caretaking] purposes, inventories conducted according to reasonable police regulations relating to inventory procedures administered in good faith are permissible under the fourth amendment." *Id.* (internal quotations omitted).

[¶ 24] Here, Officer Eisenmann's search of Ressler's package was carried out in the midst of a criminal investigation. Officer Eisenmann searched the package immediately after the canine test and there is no evidence the police were concerned with protecting or safeguarding either their interests or Ressler's property interests. *See State v. Gelvin*, 318 N.W.2d 302, 307 (N.D.1982) (upholding inventory search of wallet conducted pursuant to standard jailhouse procedures). Absent a warrant or a valid exception to the warrant requirement, the search of Ressler's package at the law enforcement center contravened the Fourth Amendment.

D.

[¶ 25] Officer Eisenmann legitimately observed the evidence discovered during Danielson's private-party search. But, Officer Eisenmann's movement of Ressler's shipment to the law enforcement center was a seizure that was not reasonable, and the evidence that flowed from this seizure, the resulting positive canine alert and the warrantless search of the package, must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

[¶ 26] Although the State did not argue inevitable discovery, excluding the events following Officer Eisenmann's observation of the package at We Ship, as we must, there is, in any event, insufficient evidence to conclude police would have nonetheless conducted a garbage search at Ressler's residence. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (inevitable discovery). Because the garbage search provided the probable cause to obtain a search warrant for Ressler's residence, the evidence discovered in Ressler's home must also be suppressed.

[¶ 27] We hold the district court erred in refusing to suppress evidence, and we reverse Ressler's conviction and order deferring imposition of his sentence and re-

mand to the district court to allow Ressler to withdraw his guilty plea.

[¶ 28] DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 29] The Honorable DANIEL J. CROTHERS did not participate in this decision.