Filed 6/7/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 120

State of North Dakota, Plaintiff and Appellee

v.

Steven Allen Schmidt, Defendant and Appellant

No. 20110234

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Brian D. Grosinger, Assistant State’s Attorney, 210 Second Avenue NW, Mandan, N.D. 58554, for plaintiff and appellee.

Travis W. Finck, 314 East Thayer Avenue, Suite 200, Bismarck, N.D. 58504, for defendant and appellant.

State v. Schmidt

No. 20110234

 

Sandstrom, Justice.

[¶1] Steven Schmidt appeals from a criminal judgment after a jury found him guilty of theft of property.  We affirm, concluding the district court did not err in denying Schmidt’s motion to suppress evidence and his proposed jury instruction, and the court did not abuse its discretion in denying his pre-trial motion.

 

I

[¶2] On November 1, 2010, after speaking with her financial institution, Capitol Credit Union, and noting suspicious withdrawals from her savings account, Heidi Blum notified the Mandan Police Department about two unauthorized uses of her automated teller machine (“ATM”) card.  Blum claimed someone used her ATM card on October 31, 2010, at two separate locations in Mandan—Central Market and Dakota Express, a grocery store and a gas station and convenience store, respectively—to withdraw $165 from her bank account without her consent.  During her conversation with Capitol Credit Union, Blum learned that Capitol Credit Union had mailed a new ATM card to her address and that it had separately mailed to the same address a corresponding personal identification number.  Blum, however, had moved and no longer lived at that address.  As part of the investigation, a Mandan police officer learned Schmidt and his girlfriend resided at the address where Capitol Credit Union had mailed Blum’s new ATM card and corresponding personal identification number.

[¶3] The police officer also investigated the two locations of the alleged unauthorized uses of Blum’s ATM card.  The police officer learned Central Market did not have video surveillance showing its ATM.  The officer asked David Mees, the owner of Dakota Express, for a copy of in-store surveillance video showing the ATM at the time of one of the suspicious withdrawals.  According to the police officer, Mees informed her the video showed a white male, approximately fifty years old, walk into the store, walk to the area of the ATM, and walk out of the store while putting something into his wallet.  Mees also informed the police officer he printed a still photo of the man and left it at the gas station for her to pick up.  The police officer picked up the photo, but never received the video from Mees before the video surveillance system recorded over the original video.

[¶4] The police officer arrested Schmidt after questioning him and his girlfriend about receiving mail not addressed to them at their residence, and after obtaining the still photo from Mees, which showed Schmidt leaving Dakota Express at approximately the same time a suspicious withdrawal was made using Blum’s ATM card.  The State charged Schmidt with theft of property.  Before trial, Schmidt moved to suppress the still photo obtained from the Dakota Express surveillance video and any testimony based upon the photo or the video, arguing the State failed to collect and preserve material, exculpatory evidence in violation of 
Brady v. Maryland
, 373 U.S. 83 (1963).  The district court denied Schmidt’s motion.  Schmidt also moved to limit trial testimony of the still photo only to the testimony personally recalled by Mees or ascertainable from the photo and to exclude any testimony about the surveillance video.  The court denied Schmidt’s motion as well as his proposed jury instruction requiring an adverse inference about the absence of the video recording at trial.  A jury found Schmidt guilty of theft of property.

[¶5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Schmidt timely appealed from the criminal judgment under N.D.R.App.P. 4(b).  We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29-28-06.

 

II

[¶6] Schmidt argues the district court abused its discretion in denying his motion to suppress and his pre-trial motion to limit trial testimony of the still photo and exclude testimony about the surveillance video.  Schmidt also argues the court erred in denying his proposed jury instruction.

A

[¶7] Schmidt argues the district court violated his due process rights under the North Dakota and United States Constitutions in denying his motion to suppress evidence.

[¶8] When we review a district court’s denial of a motion to suppress evidence, “we defer to the district court’s findings of fact and resolve conflicts in testimony in favor of affirmance.”  
State v. Smith
, 2005 ND 21, ¶ 11, 691 N.W.2d 203.  “We will affirm a district court’s decision if ‘there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.’”  
Id.
 (quoting 
City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994)).  “‘We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact.’”  
Id.
 (quoting 
Thompson
, 520 N.W.2d at 581).  Schmidt’s argument implicates a constitutional due process issue, which is a question of law.  
See
 
State v. Burr
, 1999 ND 143, ¶ 9, 598 N.W.2d 147.  Questions of law are fully reviewable on appeal.  
Smith
, at ¶ 11.

[¶9] Schmidt argues, in investigating the alleged crime, the State failed to preserve and provide him evidence favorable to him under 
Brady
, resulting in a violation of his due process rights.  He claims the State failed to preserve the surveillance video from Dakota Express.  He argues the State allowed the video to be destroyed, because the police officer did not take steps to preserve the video before the video surveillance system recorded over the video.  Schmidt argues the video was material and exculpatory and, under 
Brady
, the State unconstitutionally destroyed the video.  Schmidt also argues the State acted in bad faith in allowing the video to be destroyed because it was destroyed by Mees, a potential witness in the case.  As a result, Schmidt argues, the court erred in admitting a still photograph taken from the video as well as any testimony about the video.

[¶10] In 
Brady
, “the United States Supreme Court held that 
suppression
 by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment.”  
Rümmer v. State
, 2006 ND 216, ¶ 21, 722 N.W.2d 528 (quoting 
Syvertson v. State
, 2005 ND 128, ¶ 6, 699 N.W.2d 855) (emphasis added).  The suppressed “evidence is material if ‘there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’”  
Strickler v. Greene
, 527 U.S. 263, 280 (1999) (quoting 
United States v. Bagley
, 473 U.S. 667, 676 (1985)).

[¶11] Rule 16, N.D.R.Crim.P., governs discovery practices in criminal cases in North Dakota and is a reciprocal discovery rule, listing the duties and obligations of a prosecutor and a defendant when conducting discovery.  “The prosecutor has a duty to preserve evidence that is material and favorable to the defendant.”  
State v. Steffes
, 500 N.W.2d 608, 612 (N.D. 1993); N.D.R.Crim.P. 16(a)(1).  “A prosecutor’s failure to do so may be held to violate the defendant’s constitutional right to due process and a fair trial.”  
Steffes
, at 612; N.D.R.Crim.P. 16(d)(2).

[¶12] In 
Steffes
, 500 N.W.2d at 612, this Court summarized three categories of cases in which courts “have attempted to analyze an accused’s right to due process when prosecutors fail[ed] to provide evidence to the defense which [was] within, or potentially within, their purview.”  The three categories of cases involving the conduct of the State, which resulted in the loss of evidence, include:  “(1) the [S]tate’s failure to 
collect
 evidence in the first instance, (2) the [S]tate’s failure to 
preserve
 evidence once it has been collected, and (3) the [S]tate’s 
suppression
 of evidence which has been collected and preserved.”  
Id.
 (emphasis added).

[¶13] Schmidt argues the State committed a 
Brady
 violation under the second category articulated in 
Steffes
 because Mees collected the surveillance video from his gas station and the State failed to preserve the video.  Schmidt’s argument, however, misreads the 
Brady
 standard.  Under the three categories articulated in 
Steffes
, a 
Brady
 analysis is appropriate only in cases classified under the third category, involving “the [S]tate’s suppression of evidence which has been collected and preserved.”  
Steffes
, 500 N.W.2d at 612.  In 
Brady
, 373 U.S. at 84-86, the prosecution 
suppressed
 material statements made by a co-defendant that would have been favorable to Brady in his defense, despite defense counsel’s request for the statements.  The United States Supreme Court held that “[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”  
Brady
, 373 U.S. at 87.  This case is not factually analogous to 
Brady
, because the State did not suppress evidence that it had already collected and preserved.  Instead, the police officer never collected the video recording from Mees in the first instance.  As a result, cases like 
Brady
 and its progeny, “in which the issue centers around the state’s suppression of evidence[,] are distinguishable and not precedential to [Schmidt’s] case.”  
Steffes
, at 613.

[¶14] It is also improper to analyze the State’s actions in this case under the second category articulated in 
Steffes
, despite Schmidt’s argument to the contrary.  In 
Arizona v. Youngblood
, 488 U.S. 51 (1988), the United States Supreme Court opined on the State’s failure to 
preserve
 evidence once it had been collected.  In 
Youngblood
, police officers collected evidence relating to charges of sexual assault and child molestation but did not preserve the evidence, resulting in the inability of a criminal pathologist to properly test the evidence.  
Id.
 at 53-54.  Although the State did not use the evidence in its case-in-chief, on appeal from his conviction, the defendant contended the State breached its duty to preserve evidence that could have proven useful to him in his defense, thus denying him due process.  
Id.
 at 54-55.  The United States Supreme Court held that “unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.”  
Id.
 at 58.

[¶15] The State’s actions in this case do not warrant application of the second category articulated in 
Steffes
, because the State, through the police officer, neither collected the surveillance video nor had the video in its possession in the first instance.  As a result, the State could not have “destroyed” the video, let alone “destroyed” it in bad faith.  
See
 
Steffes
, 500 N.W.2d at 613 (“Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense.”).

[¶16] We conclude this case falls under the first category articulated in 
Steffes
—the State’s failure to collect evidence in the first instance—which is how the district court analyzed Schmidt’s motion to suppress.  In 
Steffes
, 500 N.W.2d at 610, a police officer recorded an audio conversation with the defendant in the officer’s patrol car, where the officer administered an alphabet recitation exercise and a counting exercise to the defendant.  There, the officer collected the evidence in the first instance, and the defendant had access to the audio recording before and during an administrative hearing, but the officer recorded over the audio tape before the defendant’s criminal trial.  
Id.
  Here, unlike 
Steffes
, the police officer “fail[ed] to collect evidence in the first instance.”  
See
 
id.
 at 612.  The testimony by Mees and the police officer indicated the officer requested video from Mees, but the video surveillance system recorded over the video before the officer received the video from Mees.  Although the officer requested the video from Mees, a private party, and she arguably could have been more diligent in reminding him to copy the video before the system recorded over it, she never actually collected the video from Mees.  The police officer collected only a still photograph from Mees that he had taken from the video recording.  The State cannot preserve video evidence it never had in its possession.  Additionally, Mees cannot be considered an agent of the State merely because a police officer requested surveillance video from him as part of the investigation.  
See
 
State v. Ressler
, 2005 ND 140, ¶ 10, 701 N.W.2d 915 (we recognized the difference between a private-party search and a governmental search in the context of the Fourth Amendment).  We have held that a private-party search not conducted at the behest of the State does not violate a defendant’s rights under the Fourth Amendment.  
See
 
id.
  Here, although not in the search and seizure context, Mees is neither a State official, nor did he act on behalf of the State.  Rather, he responded to a discovery request from the officer as part of the officer’s investigation.  As a result, the State cannot be held accountable for the actions, or inactions, of a private party.  
Cf.
 
State v. Seglen
, 2005 ND 124, ¶ 6, 700 N.W.2d 702 (quoting 
Walter v. United States
, 447 U.S. 649, 656 (1980)) (“‘a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment’” because the “Fourth Amendment only applies to government action”).

[¶17] In his brief, Schmidt admits the State’s failure to collect evidence in the first instance “has practically no impact” on a defendant’s “due process rights.”  Because we have concluded the State’s actions fall under the first category articulated in 
Steffes
, Schmidt, by his own admission, does not have a meritorious argument.  
See
 
Steffes
, 500 N.W.2d at 612 (“Police generally have no duty to collect evidence for the defense.”).

[¶18] After reviewing the record, we conclude the district court properly considered Schmidt’s argument under the first category articulated in 
Steffes
 because the police officer failed to collect the video recording from Mees.  
See
 
Steffes
, 500 N.W.2d at 612.  Because Mees is not an agent of the State, the State never had the video in its possession.  
Cf.
 
Ressler
, 2005 ND 140, ¶ 10, 701 N.W.2d 915; 
Seglen
, 2005 ND 124, ¶ 6, 700 N.W.2d 702.  Therefore, we affirm the district court’s decision to deny Schmidt’s motion to suppress evidence.

B

[¶19] Schmidt also argues the district court abused its discretion in denying his pre-

trial motion, which sought to limit trial testimony about the still photo of the video recording only to the testimony personally recalled by Mees or ascertainable from the photo, and to exclude any mention of the video.

[¶20] A pre-trial motion in limine is a procedural tool to ensure that unfairly prejudicial evidentiary matters are not discussed in the presence of the jury.  
Williston Farm Equip., Inc. v. Steiger Tractor, Inc.
, 504 N.W.2d 545, 550 (N.D. 1993).  We review a district court’s denial of a motion in limine under an abuse of discretion standard.  
Id.
 at 548-49.  “The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.”  
Nesvig v. Nesvig
, 2006 ND 66, ¶ 12, 712 N.W.2d 299.  “The party seeking relief must show more than the district court made a ‘poor’ decision, but that it positively abused the discretion it has under the rule.”  
Id.
  “We will not overturn the district court’s decision merely because it is not the decision we may have made if we were deciding the motion.”  
Id.

[¶21] At trial, Mees testified about the still photo taken from the video recording.  Schmidt argues Mees’s testimony about the video was inadmissible hearsay because the video was testimonial in nature.  Schmidt also argues the court violated his confrontation rights by allowing Mees to testify about the contents of the video without first providing him an opportunity to view the video.  As a result, Schmidt argues the court should have excluded Mees’s testimony about the video because he did not have an opportunity to view the video before it was recorded over.

[¶22] The State responds that Mees did not quote an out-of-court declarant, a requirement of the hearsay rule, but rather testified about his personal observations of the video in a manner similar to any other fact witness.  The State also argues the court did not violate Schmidt’s confrontation rights because Mees testified at the suppression hearing and at trial about his observations of the contents of the video and was subject to cross-examination by Schmidt.

[¶23] Rule 801(c), N.D.R.Ev., defines “hearsay” as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”  Rule 801(a), N.D.R.Ev., defines “statement” as “(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.”

[¶24] Schmidt’s argument that Mees’s trial testimony about the video is inadmissible hearsay is misguided and unpersuasive.  Mees testified at trial about his observations of the video recording and was subject to Schmidt’s cross-examination.  Mees’s trial testimony was not an out-of-court statement, as required of hearsay statements under N.D.R.Ev. 801(c).  There is nothing in the record indicating Mees made “an oral or written assertion” or any “nonverbal conduct” intended to be an assertion in the video or out of court.  Rather, Mees testified to his recollection of the video and was subject to Schmidt’s cross-examination.

[¶25] Schmidt’s confrontation argument is also without merit.  The Sixth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, 
Pointer v. Texas
, 380 U.S. 400, 403 (1965), provides, “In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.”  Under that clause, a witness’s testimony against a defendant is “inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.”  
Melendez-Diaz v. Massachusetts
, 557 U.S. 305, 129 S. Ct. 2527, 2531 (2009).  Here Schmidt was not deprived of his right to confront Mees because Mees testified at trial about what he viewed on the video, and Schmidt had the opportunity to confront and cross-examine him.  
See
 
Crawford v. Washington
, 541 U.S. 36, 59 (2004).

[¶26] We conclude the district court did not abuse its discretion in denying Schmidt’s pre-trial motion.

C

[¶27] Schmidt argues the district court erred in denying his proposed jury instruction, which sought to require an adverse inference about the absence of the Dakota Express surveillance video at trial.

[¶28] “On appeal, jury instructions are fully reviewable and must be viewed as a whole; and when so considered, if they correctly advise the jury as to the law, their inclusion or exclusion is sufficient.”  
Steffes
, 500 N.W.2d at 611.

[¶29] Schmidt proposed the following jury instruction, which the district court denied:

If you find that the State has destroyed or lost, caused to be destroyed or lost or allowed to be destroyed or lost any evidence whose content or quality are in issue, you may infer that the true fact is against the State’s interest.

[¶30] Schmidt argues the district court’s decision to deny his proposed jury instruction prejudiced him and violated his constitutional rights.  Schmidt’s proposed jury instruction, however, implies the State had evidence in its possession that it eventually lost or destroyed.  A review of the record establishes the police officer never had the video in her possession.  Under our standard of review and the evidence, it would have been misleading for the court to have allowed the jury to infer the police officer or another member or agent of the State caused the video to be destroyed or lost.  Instead, Mees, a private party, did not copy the video as the officer requested before the video surveillance system recorded over it, thereby preventing access to any relevant content on the video.

[¶31] “Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury.”  
Steffes
, 500 N.W.2d at 611.  “In a criminal case, a defendant is entitled to a jury instruction on a valid applicable theory, but only if there is some evidence to support it.”  
Id.
; N.D.R.Crim.P. 30.  Under our analysis in this opinion, Schmidt did not provide any evidence to support his proposed jury instruction, because the State never collected the video from Mees, precluding the State from an opportunity to preserve or suppress the contents of the video.  
See
 
Steffes
, at 612.  Because there is no evidence to support Schmidt’s theory of a due process violation and his proposed jury instruction would not have correctly and adequately informed the jury of the applicable law, we conclude the district court properly denied Schmidt’s proposed jury instruction.  
See
 
id.
 at 614.

 

III

[¶32] We affirm the judgment.

[¶33] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.